JOHN C. DAVIS and others v. WILLIAM INSCOE.

*Unregistered Deed—Statute of Frauds—Executor, renunciation of—Equitable Estate—Purchaser—Title.*

1. A deed for land executed and delivered but not registered, does not pass the legal but only the equitable estate; and before registration the parties may rescind the contract by returning the consideration and re-delivering the deed.

2. Where the agreement to rescind in such case is by parol, a third party is not permitted to set up the statute of frauds to invalidate the same for his benefit; this can be done only by the party to the contract who is to be charged thereby.

3. A sole executor, or a surviving executor, who has renounced, may retract his renunciation at any time and administer, before administration granted. Any intermeddling with the estate before qualifying is evidence of such retraction, and his subsequent qualification and the grant of letters testamentary validate, by relation, contracts made by him in behalf of the estate.

4. The equitable estate in land which an unregistered deed conveys is subject to sale under execution, and the purchaser at such sale is entitled to a decree for the conveyance of the legal estate.

5. Where such deed is surrendered and the contract rescinded in pursuance of an agreement made before judgment recovered against the grantee, the purchaser at a sale under execution on said judgment acquires no title to the land, the effect of the agreement being to extinguish the equity of the grantee.

6. But where the judgment was obtained prior to such agreement and a sale is had thereunder, he acquires the equitable title, which when set up is sufficient to defeat an action to recover the land.

(*Love* v. *Belk,* 1 Ired. Eq , 163 ; *Green* v. *R. R. Co.,* 77 N. C., 95 ; *Mizell* v. *Burnett,* 4 Jones, 249 ; *Wood* v. *Sparks,* 1 Dev. & Bat., 389 ; *Hare* v. *Jernigan,* 76 N. C., 471 ; *Triplett* v. *Witherspoon,* 74 N. C., 475 ; *Ivey* v. *Granberry,* 66 N. C., 223 ; *Hoke* v. *Henderson,* 3 Dev: 12, cited and approved.)

CIVIL ACTION to recover land tried at Spring Term, 1880, of FRANKLIN Superior Court, before *Seymour, J.*

A jury trial being waived, the judge found the facts as follows : Dr. Thomas Davis of Franklin county died in 1862, leaving a last will and testament by which he directed his land to be sold by his executors, N. B. Massenburg and John C. Davis, who were appointed by him executors of his will. Massenburg alone qualified, and Davis renounced on the 22d day of January, 1863. Massenburg, as executor, sold the land in controversy and A. H. A. Stallings became the purchaser at five dollars and fifty cents per acre, and on the same day executed a bond for the purchase money with two sureties who were at the time solvent, and a deed for the land consisting of two hundred and sixty-six acres was executed by said executor to him. On the same day, Stallings sold and conveyed by a deed in fee simple to A. W. Pearce, Sen., one hundred and fifty-six acres of the land, upon the same terms and for the same price as those between the executor and Stallings, and Pearce had notice that no money had been paid for the land.

At September term, 1867, of the court of pleas and quarter sessions for Franklin county, Simon Kittrell obtained a judgment for one hundred and fifty dollars with interest against said Pearce and others, and at the same term Brown & Thomas obtained judgment against Pearce and others for two hundred and fifty dollars and interest.

Executions were issued on these judgments from September term returnable to December term of said court, and *alias* executions from December term, 1867, to March term, 1868, of said court, and duly levied on said land. On the

11th of March, 1868, the sheriff by virtue of said executions sold and conveyed the one hundred and fifty-six acre tract (conveyed by Stallings to Pearce) to Thomas & Thomas, who in the year 1873 conveyed the same to the defendant.

At June term, 1868, a judgment was obtained by Samuel Perry against said Stallings for one hundred and twenty-five dollars and interest, and execution issued upon the same from said term returnable to September term, 1868. The case and execution were transferred to the superior court on the 19th of June, 1868, and an *alias* execution issued from September term, 1868, to spring term, 1869, and levied by the sheriff on the one hundred and ten acre tract of the land conveyed to him by Massenburg as executor, and a *vend. ex.* issued from spring term, in pursuance of which the sheriff sold and conveyed said land to one Minitree, who in 1872 conveyed the same to the defendant.

The deed from Massenburg to Stallings was never registered and the purchase money was never paid.

Massenburg died in February, 1867; and on the 11th of March, 1869, John C. Davis qualified as executor of Thomas Davis, deceased.

About a year before the 5th of June, 1869, the date of the sheriff's sale of the Stallings' part of the *locus in quo* and before any judgment had been obtained against him, an oral agreement was made between Stallings and John C. Davis, by which, in consideration of the fact that no money had been paid for the land and that the sureties on the bond for the purchase money were insolvent, the said Stallings agreed to surrender his unregistered deed for the land, and shortly after the 11th of March and after the levy of the execution aforesaid and before the 5th of June, 1869 (the date of the sale), the said Stallings surrendered the deed to Davis.

Stallings went into possession of the one hundred and ten acre tract in 1863, and remained therein until he surren-

dered the deed, and there was no actual possession of the land from the time of such surrender until after the execution sale, when Minitree took possession ; and from the time of the sale until the bringing of this action, the land has been continuously in possession, first of Minitree, and then of the defendant.

A. W. Pearce, the Thomases, and the defendant have had continuous possession of the one hundred and fifty-six acre tract since the 23d of January, 1863.

The defendant had no notice in fact of the claim of plaintiff, or of the fact that the purchase money had not been paid or of the agreement to surrender or of the surrender of the deep, until several years after he had bought and paid for the land.

The court found as conclusions of law, that plaintiff is entitled to recover the one hundred and ten acre tract, on the ground that the parol agreement for a conveyance of said tract was made before the teste of the execution, and that no person but the parties thereto can avail himself of the statute of frauds ; and further, that plaintiff is not entitled to recover the one hundred and fifty-six acre tract. There was judgment accordingly, from which both parties appealed.

*Messrs. J. B. Batchelor* and *Reade, Busbee & Busbee,* for plaintiffs.

*Mr. Charles M. Cooke,* for defendant.

ASHE, J. The land sold by the executor, Massenburg, was divided into two tracts by the purchaser, Stallings, by his selling one hundred and fifty-six acres thereof to A. W. Pearce on the day of sale, and reserving the residue of one hundred and ten acres. And though both tracts ultimately came into the possession of the defendant, they were acquired by him through different chains of title. The title to each

was derived through a sheriff's deed, but by sales under different executions and at different times, and the principles of law which govern the one case have no application to the other.

The plaintiffs claim title to the whole of the land sold by the executor. They insist that upon the death of the father, the legal title descended to them and was never divested by the sale to Stallings, because the deed made by Massenburg, the executor, to him was never registered; and a deed though executed and delivered but not registered does not pass the legal estate. This according to recent decisions of this court we must hold to be law, whatever may be our individual opinions in regard to its correctness. The unregistered deed however conveyed an equitable estate to Stallings. But before any lien was acquired upon the one hundred and ten acre tract by virtue of the execution issued upon the judgment obtained by Perry against Stallings, and in fact before the rendition of the judgment, without any allegation of fraud, there was a parol agreement between Stallings and John C. Davis, the surviving executor, to surrender the unregistered deed in consideration that the notes given by him for the purchase money should be delivered up. If this was a valid contract, it had the effect to extinguish the equity of Stallings in the tract of one hundred and ten acres. When a deed has been delivered, but before probate and registration, the vendor and vendee may rescind the contract by returning the consideration and redelivering the deed. *Love* v. *Belk,* 1 Ired. Eq., 163. But the validity of this contract is denied by the defendant on two grounds; first, that it is a parol contract for the conveyance of an interest in land and is within the statute of frauds and therefore void; and secondly, that Davis having renounced the executorship had no right to make the contract.

The answer to the first ground is that the defendant was not a party to the agreement and had no right to set up the

statute of frauds for the purpose of invalidating the contract. No person can avail himself of the statute for his own benefit, unless he is a party to the contract and is to be charged thereby. *Green* v. *R. R. Co.,* 77 N. C., 95; *Mizell* v. *Burnett,* 4 Jones, 249. Stallings was the only person to be charged by the contract, and he had the right if he chose to exercise it to waive the protection of the statute; for when such a contract comes in question *inter alios,* it is generally regarded as a valid contract, and a third party cannot invoke its application for his own benefit. Though Stallings was not legally bound to fulfill his parol contract by surrendering the deed, yet as he was unable to pay the purchase money, there was a moral duty resting upon him to do so; and if he chose to waive his legal right from a sense of moral obligation, the defendant being a stranger to the contract had no right to complain or preclude him from the exercise of his discretion. Browne on Stat. of Frauds, § 130–135.

The other ground is not so easily answered, but reasoning by analogy we are led to the conclusion that Davis had the right to make the contract in behalf of the estate of his testator. It is true he had renounced the executorship, and his renunciation had been put on record; but he had the right after the death of his co-executor and before general letters of administration with the will annexed were granted on the estate of his testator, to retract his renunciation and administer. The renunciation was not peremptory. Williams on Executors, 250. And in *Wood* v. *Sparks,* 1 Dev. & Bat., 389, Judge GASTON says, if an executor actually renounces, "it is not to be questioned he may come forward the next day and take the oath of office and enter upon the execution of its functions." But this principle, we take it, was meant to apply to those cases where the executor was the sole executor and retracts his renunciation before letters of administration granted.

26

An executor may do many things before receiving his letters, or even before probate. He may receive or release debts, give away or dispose of the goods and effects of his testator, assent to legacies and bring actions, though he cannot declare. Williams on Executors, 256–260; Toller, 45. If an executor may do these acts before receiving his letters or before probate, we do not see why a surviving executor who had renounced, but may retract his renunciation at any time and administer before letters of administration granted, may not do the same acts. His taking possession of the estate or intermeddling with it in any way before qualifying, would be evidence of the retraction of his renunciation, and would subject him to all the responsibilities of the office. And as Judge GASTON says in *Wood* v. *Sparks, supra,* "it might perhaps notwithstanding the impropriety of such conduct constitute him a full executor." An executor who intermeddles with an estate may be compelled to prove the will and administer. And with respect to what acts will amount to administering so as to render him compellable to act, it is held that whatever an executor does with respect to the goods and effects of the testator which shows an intention in him to take upon him the executorship, will regularly amount to administration. Williams *supra,* 244.

We therefore hold that John C. Davis in entering into the contract with Stallings for the surrender of the notes of the latter and receiving from him the unregistered deed, was such an act as manifested the intention of assuming the burthen of administration, and was evidence of the retraction of his refusal to administer, and when afterwards he qualified as executor and took out letters, it made valid by relation the act of agreement, if it was not so before.

The case of the one hundred and fifty-six acre tract of land stands upon a different footing. The execution against Pearce who purchased the tract from Stallings, was issued

from the September term, 1867, of the county court of Franklin to its December term ensuing, and at the time it was issued, Stallings had the deed from Massenburg in his hands, but unregistered. The deed not being registered, he had only an equitable interest in the land, and the sale to Pearce passed only the same interest which he had, the legal title in the meantime remaining in the heirs of Thomas Davis, which could be divested only by the registration of the deed to Stallings, for an unregistered deed does not pass the legal estate. *Hare* v. *Jernigan*, 76 N. C., 471; *Triplett* v. *Witherspoon*, 74 N. C., 475; *Ivey* v. *Granberry*, 66 N. C., 223. The interest of Pearce then being equitable, the question is, was it such an equity as might be sold under execution?

In the case of *Hoke* v. *Henderson*, 3 Dev., 12, Chief Justice RUFFIN said : " We think it clear that the interest of a purchaser at a sheriff's sale who has paid his money but not taken a deed, is a trust estate within the act of 1812. The whole equitable interest is in him, and he has a right to call for a conveyance to himself at any moment." And the same learned judge in that case said, " the estate of a *cestui que trust* may be sold under execution though it may be necessary that the purchaser should come into a court of equity for the discovery, declaration and establishment of the trust and of permanent evidence of it, on which his legal title depends." Ours is a purer and more simple equity than that. There, the money it is true had been paid, and that raised the equity which could only be enforced by invoking the aid of the court of equity. But here, though the money has not been paid, the deed had been delivered, and all that was necessary to draw to it the legal title was its registration. It required no interposition of the equitable jurisdiction of the court to perfect the legal title. Such was the interest of Stallings when he sold to Pearce, and the interest of the latter, which was sold by the sheriff, under the execution against him. It is the equita-

ble title derived by the defendant through mesne convey-
ances from the sheriff that is set up as a defence in the
answer against the recovery of the plaintiff of the hundred
and fifty-six acre tract, and it has been held that where the
legal and equitable remedies are blended together, as in
our present system of pleading, the defendant can defeat
the action to recover land upon equitable principles, and if
upon the application of these principles the plaintiff *ought
not to be put in possession of the premises, he cannot recover in the
action.* *Chase* v. *Peck,* 21 N. Y., 581.

We have considered all the points raised in the argu-
ment of this case and hold, for the reasons herein given,
that the plaintiff is not entitled to recover the tract of one
hundred and fifty-six acres, but that he is entitled to re-
cover the one hundred and ten acre tract, and his costs.
There is no error. The judgment of the superior court is
affirmed.

No error.                                        Affirmed.


In same case upon plaintiffs' appeal :


ASHE, J. The questions presented in this case are de-
cided in the case between the same parties at this term of
the court, on the appeal of the defendant. It is unneces-
sary to repeat the reasons there stated ; but, as it was de-
cided the plaintiff could not recover the tract of land sued
for, consisting of one hundred and fifty-six acres, by reason
of the equitable counter-claim set up by the defence, we
hold the defendant is entitled to the possession of that tract
of land; and the legal title being in the plaintiffs, he has
the right to a decree for the conveyance of the legal title
from the plaintiffs and that it be declared in the decree
that the effect thereof shall be to transfer to the defendant
the legal title of the said land in fee simple.