J. E. AUSTIN and wife v. H. B. KING.

*Deed, effect of registration, and surrender of unregistered—Evidence—Declaration of party in ejectment.*

1. An unregistered deed for land passes an inchoate legal as well as the equitable title, and the registration completes the title.

2. As an unregistered deed does not pass the complete legal title, it may be surrendered or destroyed, and the grantor thereby reinvested with the title, provided the same be done by agreement of the parties and in good faith, and not to the prejudice of third persons.

3. In ejectment, upon trial of an issue as to whether an unregistered deed was surrendered to the party under whom the plaintiff claimed, the defendant, for the purpose of showing it had not been surrendered, offered in evidence a will under which he claimed and in which the testator recognized the land as his own. The plaintiff objected, upon the ground that the evidence thus furnished was a declaration of the testator and in his own interest, and the court sustained the objection, but admitted the evidence "as a circumstance" to be considered by the jury; *Held* error—whether it be treated as a "declaration" or a "circumstance," the effect is practically the same. *Held further*, that the will is incompetent evidence upon the issue.

4. While improper evidence ought not to be allowed, yet, when it is, the opposing party may be permitted to rebut it by like evidence, and if it be seen that no injustice results therefrom, a new trial will not be granted.

(*Morris* v. *Ford*, 2 Dev. Eq., 412; *Walker* v. *Coltraine*, 6 Ired. Eq., 79; *Phifer* v. *Barnhart*, 88 N. C., 333; *Hare* v. *Jernigan*, 76 N. C., 471; *Davis* v. *Inscoe*, 84 N. C., 396; *Love* v. *Belk*, 1 Ired. Eq., 163; *Beaman* v. *Simmons*, 76 N. C., 43; *Cheek* v. *Watson*, 90 N. C., 302; cited and approved).

EJECTMENT tried at August Special Term, 1884, of UNION Superior Court, before *MacRae, J.*

John Morgan Rea, on the 25th day of March, 1857, by proper deed, conveyed the land in dispute to his son, John L. Rea, who was the father of the *feme* plaintiff. John L. Rea died in December, 1862, leaving surviving him the *feme* plaintiff, his only heir at law. At that time she was an infant of tender years.

The son, John L., on the 18th day of October, 1858, on account of some entanglements, executed and delivered to his father a deed, reconveying the land to him, but this deed was never registered.

It is alleged, that afterwards, about Christmas of the year 1858, the father redelivered, or surrendered the last mentioned deed to his son, John L., to be cancelled, and to the end, the title to the land might remain in the latter, and whether it was so surrendered or not, is the principal question raised by the pleadings and evidence.

John Morgan Rea, the father, on the 26th day of March, 1859, published his last will and testament, and afterwards died in that year, and his will was duly proved. By this will, he devised the land in question and other land to his wife for life, remainder to his two sons, James and Pinkney. James afterwards conveyed his interest therein to his brother Pinkney and Elizabeth Howard, on the 31st day of October, 1866, and Pinkney conveyed his interest thus acquired to the defendant on the 19th of October, 1868, and Elizabeth Howard and her husband James, conveyed her interest to defendant on the 18th day of December, 1869.

On the trial, to defeat the *prima facie* title, the defendant put in evidence, the said deed, dated the 18th day of October, 1858, executed by John L. Rea to his father, purporting to *reconvey* to him the land in question. This deed was not registered when put in evidence, but by agreement in presence of the court, no objection was made on that account.

The plaintiffs admitted the execution of this deed, but contended that it had been surrendered to John L. Rea, as

stated above, and had no operative effect, and that the defendant, or those under whom he claims, came into possession of it improperly, and in a way not explained by the evidence.

On the one hand, the plaintiffs introduced evidence tending to support and prove this contention; and on the other hand, the defendant introduced evidence tending to controvert and disprove it.

The defendant put in evidence the will of John Morgan Rea, for the purpose of showing that he had devised the land in question to his two sons, James and Pinkney, thus indicating that he recognized the land as his own, and as tending to show that he had not surrendered or redelivered the deed to his son, John L. Rea. The plaintiff objected to the admission of the will, *as a declaration* on the part of the testator, because it was in his own interest, and insisted that "it was not proper for the jury to consider the said will, or anything in it, in passing upon the question as to whether or not the deed from J. L. to J. Morgan Rea, was surrendered." The court sustained the exception to the extent of saying to the jury that "it is not competent as a declaration, but is a circumstance which you may consider in reaching your conclusion whether or not the said deed was surrendered." The plaintiffs excepted.

As tending to avoid the inference to the prejudice of the plaintiffs that might be drawn by the jury from the devise in the will referred to, they proposed to show by witnesses that at the time the testator executed the will he had become suddenly sick, was violently ill, and died shortly afterwards; that he was not insane, but in a high state of excitement; and for the like purpose, they offered to show that the testator had, by his will, undertaken to devise a tract of land of fifty-four acres that did not belong to him, but to his wife, and that he never claimed it as his. The defendant objected to the reception of such testimony, the

court sustained the objection and the plaintiffs excepted and appealed from the judgment rendered.

Messrs. *Covington & Adams*, for plaintffs.
Messrs. *Payne & Vann*, for defendant.

MERRIMON, J. In this state an unregistered deed for land passes an inchoate legal, as well as the equitable title, to become complete and absolutely operative for all proper purposes according to its true intent, as soon as it shall be registered. Registration is in lieu of livery of seizin, attornment or other ceremonies necessary to make certain classes of conveyances operative at the common law. It makes the deed "good and available in *law*," as well as equity, from the time it was delivered. The unregistered deed is *in fieri* until it shall be registered, when at once its legal availability supervenes, relating back to the time of its delivery. THE CODE, § 1245; *Morris* v. *Ford*, 2 Dev. Eq., 412: *Walker* v. *Coltraine*, 6 Ired. Eq., 79; *Phifer* v. *Barnhart*, 88 N. C, 333.

This view does not contravene what is held in respect to unregistered deeds in *Hare* v. *Jernigan*, 76 N. C., 471, and the cases there cited, and the later case of *Davis* v. *Inscoe*, 84 N. C., 396. These cases simply decide, that such deeds are not "good and available in law" to pass the complete legal title, and that only the equitable estate passed by them can be dealt with effectively.

As the unregistered deed does not pass the complete legal estate, it is competent for the alienee, bargainee, or donee, to surrender such deed to him who executed it, and thus reinvest him with the title as he had it just before the deed was executed. And so it would be, if such deed were cancelled or destroyed by agreement of the parties thereto. As the contract to convey the land, as embodied in the deed, had not been completed by the forms and requisites re-

quired by law to make it absolutely operative, such contract might be rescinded or abandoned like any other contract not required to be consummated in a particular way prescribed by law. *Love* v. *Belk,* 1 Ired. Eq., 163 ; *Beaman* v. *Simmons,* 76 N. C., 43 ; *Davis* v. *Inscoe, supra.*

But such surrender, cancellation or destruction of an unregistered deed can be made only by agreement of the parties to it, or those claiming under them, and it cannot be made fraudulently, and to the prejudice of third parties. *Morris* v. *Ford, supra.*

So that the bargainee in the deed in question, it being unregistered, might have surrendered it to the bargainor, and if he did so in good faith, the title to the land embraced by it, remained in the latter in the same plight and condition as he had it just before the deed was executed, and as if it had never been executed.

The evidence introduced by the plaintiffs tending to show that this deed was surrendered was very strong if the jury believed it. The evidence produced on the part of the defendant controverting such surrender does not appear in the record, but it may have been, probably was, equally strong, and a slight fact may have turned the scale on the trial in favor of the defendant, so that it became important to exclude slight improper evidence on the one side or the other.

The court probably instructed the jury that the will of John Morgan Rea could not be received and considered by them as a *declaration* on his part, to the effect that he had surrendered the deed to his son, because such a declaration, in any view of it, was in his own interest and therefore incompetent. We think, however, that the court erred in telling the jury that they might consider the will as a *circumstance,* in reaching a conclusion as to whether or not the deed was surrendered. It is difficult to see how the will could not be treated as a declaration on the part of the tes-

tator, and yet it could be competent as a circumstance making evidence for the purpose mentioned! Whether it be treated as a declaration, or a circumstance, the effect is practically the same. The mere fact that the testator made a will was wholly irrelevant, and had no bearing on the question before the jury. The court probably meant to say, that the jury might consider the fact, that the testator undertook to dispose of the land by it, as a *circumstance*, but anything he said in the will in terms or effect declaring that the land was his, or any disposition of it assuming it to be his, was in effect a declaration on his part that it was his, and the inference to be drawn by the jury is the same whether the devise of the land be treated as a declaration or a circumstance.

All such declarations, whether made in or out of the will were incompetent, because they were made in the interest of the party making them. The law does not allow a party thus to make evidence for himself and those who claim to take benefit of such declarations under him.

In another aspect, the will, or rather what it contained in respect to the land embraced by the deed, was incompetent as evidence. If the bargainor or bargainee were both alive and an action were pending between them involving the question as to the surrender of the deed, the bargainee would be competent as a witness in his own behalf. Any declaration of his made orally or in writing to the effect that the land was his, would be hearsay and therefore incompetent. It would be a declaration in his own interest, and as well, a declaration made in the absence of the bargainor, not under oath with opportunity to the adverse party to cross-examine the witness.

The evidence objected to was incompetent, as was also the evidence offered by the plaintiffs to show that the testator had by this will undertaken to devise other land not his own, and the state of his mind and body at the time he ex-

ecuted his will; but if this evidence had been admitted it might have impaired the weight of the evidence thus improperly received, to such extent as to render it so slight as not to be a sufficient ground for a new trial; in such case, the parties would have been upon something like an equal footing. As the court admitted the improper evidence on the part of the defendant, and refused to admit like improper evidence bearing directly on it, to rebut or counteract it, the probability is it had considerable weight, and may have turned the scale in favor of the defendant.

Improper evidence should not be admitted, but when this is done, if the opposing party proposes to rebut it by evidence bearing directly upon it and is allowed to do so, and no actual injustice seems to have resulted from such improper evidence, this would not be ground for a new trial. *Cheek* v. *Watson*, 90 N. C., 302.

In this case, especially as like evidence offered on the part of the plaintiff to rebut it was rejected, we can see that the improper evidence received might have had, indeed probably did have, very considerable weight with the jury. It was well calculated to mislead them. We, therefore, think the plaintiff is entitled to a new trial and so decide. To that end, let this opinion be certified according to law.

Error.                                    *Venire de novo.*