WM. P. FORTUNE v. CHARLES WATKINS.

*Deed—Right of wife to Dower—Specific Performance.*

1. Where a vendee who was married before the dower and homestead Acts, makes a contract to buy land, bearing date before the passage of those Acts, but the deed is not made until after their passage, his wife is not entitled to dower or homestead in such land, unless he be seized of them at his death, and a deed for them without her joinder conveys a good title.

2. Where a deed is made in pursuance of a contract to convey, it is referable for its operation to the time of the contract which it undertakes to comply with.

3. A wife is entitled to dower, under the statute, in equitable as well as legal estates.

4. The surrender of an unregistered deed or bond for title, is effectual to restore the legal or equitable title to the vendor, as between the parties, when no intervening interests have attached.

5. If in a contract for sale of lands, the vendee knows that the vendor is a married man at the time the contract is made, he cannot refuse to take the title because the wife refuses to join, and a court of equity will force him to take such title as the vendor can give.

6. The defendant agreed to purchase certain lands from the plaintiff, for a part of which the plaintiff held his (the defendant's), bond for title, and it was agreed that the said bond should be destroyed when the payments were made. The plaintiff's wife refused to join in the deed ; *It was held,* no defence to an action by the plaintiff to enforce the contract.

7. It is sufficient in actions for specific performance, that the vendor is able to make title at the time of the trial.

8. The refusal of a judge to order a reference for the purpose of taking testimony upon matters of equity addressed to him, after issues have been submitted to a jury, and a reference has been made in regard to other matters, cannot be assigned as error, as it is a matter addressed to his discretion.

9. Where the jury found that the vendor used "strategy" in bringing about a contract for the sale of land, but they further found that the defendant was capable to transacting business, and that the land was worth nearly as much as the vendee agreed to pay for it, a court of equity will not refuse to enforce the contract.

(*Sutton* v. *Askew,* 66 N. C., 172 ; *Wesson* v. *Johnson,* 66 N. C., 189 ; *Bunting* v. *Foy,* 66 N. C., 193 ; *Bruce* v. *Strickland,* 81 N. C., 267 ; *Reeves* v. *Haynes,* 88 N. C., 310 ; *Hare* v. *Jernigan,* 76 N. C., 471 ; *Miller* v. *Tharel,* 75 N. C., 148 ; *Davis* v. *Inscoe,* 84 N. C., 396 ; *Austin* v. *King,* 91 N. C., 286 ; *Hughes* v. *McNider,* 90 N. C., 249 ; *Shields* v. *Whitaker,* 82 N. C., 516 ; *Leggett* v. *Leggett,* 88 N. C., 108 ; *Wessell* v. *Rathjohn,* 89 N. C., 377 ; *Worthy* v. *Shields,* 90 N. C., 192, cited and approved).

CIVIL ACTION, tried before *Shipp, Judge,* and a jury, at Fall Term, 1884, of the Superior Court of BUNCOMBE county.

On the 25th day of August, 1874, the parties to the action entered into a mutual agreement for the sale and purchase of the tract of land mentioned in the complaint, in pursuance of which, the defendant then paid three hundred dollars, and executed his three several notes under seal to the plaintiff, payable at one, two and three years from date, each in the sum of eighteen hundred and thirty-three dollars, and all bearing interest from date; and the plaintiff gave the defendant his bond, in the penal sum of eleven thousand dollars, with condition for making him a good title in fee to the premises, on payment of all the purchase money. The contemporary payment was not made in money, but in executing a title bond to the plaintiff, for a small tract then owned by the defendant, and of that estimated value, which constitutes a part, and is embraced within the boundaries of the large tract described in the plaintiff's bond, and to be reconveyed with the other on the terms therein set out.

The note earliest maturing, was assigned to one E. Sluder, who, as such assignee, put it in suit and recovered judgment for the amount due.

The plaintiff brought his first action on the second note after it became due, but before the maturity of the last, and on April 19th, 1879, a second action was instituted on this last bond, which actions, by consent, at Spring Term, 1883, were consolidated; and thereupon the plaintiff, retaining his complaint in the first action, and entering a *nol. pros.* as to the second cause of action therein contained, with leave of the court, put in an amended complaint, appropriate to his last action. The several complaints demand judgment for the amount due on the two notes; for the recovery of possession of the land, the subject matter of the contract, by a sale of the premises if necessary ; and for general relief.

The answer filed to this amended complaint, admits the execution of the notes—alleging, however, that the contract was

20

brought about, and the defendant induced to enter into it, by the artful and false representations, importunities and undue influence practiced by the plaintiff, a sharp, shrewd man, of large business experience, upon himself, whose mind had become enfeebled by intemperate habits, unfitting him for the management of his affairs, and taking care of his own interests,—and further and especially, that the plaintiff is unable to make the title required by his bond.

The defendant entered into possession of the premises at the time of the contract, and had the use and profits until the latter part of the year 1877, when, without objection, a receiver was appointed, and he refusing to accept, another, E. H. Merrimon, was by like consent, substituted in place of the other, possession was surrendered to him, and he permitted the plaintiff, as his tenant, to occupy the land, and appropriate the profits thereof to his own use.

The following issues were extracted from the contestant allegations, submitted to, and passed on by the jury, at Spring Term, 1884:

I. Was the defendant, at the time of the contract of sale drinking heavily, so that he was not in a condition to properly comprehend the effect of the transaction?

Answer—No, defendant competent to make the contract.

II. If so, did the plaintiff fraudulently induce him, while in such condition, to enter into said contract?

Answer—We find the plaintiff used strategy in making the trade.

III. What was the value of the land, mentioned in the contract, at the date thereof?

Answer—Five thousand dollars.

At the same time, this order was entered: "Ordered by the Court, with the consent of parties, that it be referred to George A. Shuford, Esq., an attorney of this Court, to investigate and report upon the title of the plaintiff to the land mentioned and described in the pleadings.

"He shall report to the present term of the Court, the evidence offered before him, his findings of fact and conclusions of law."

The referee proceeded at once to execute the commission—gave notice to the parties and their respective counsel—heard the witnesses, and reduced their testimony to writing—and made his report, with the evidence, during the same sitting of the Court. The result is thus reported:

"From said evidence I find the following facts:

"I. That the land described in the pleadings in this action, and for which Wm. P. Fortune executed bond for title to Chas. Watkins on the 25th day of August, 1874, is the land described and embraced in the deed of said Fortune to said Watkins, and that the whole of said land is included in said deed.

"II. That a portion of said land, to-wit: 300 acres, more or less, is the tract of land, mentioned, described and conveyed in the deed from Thomas L. Harris and wife to W. P. Fortune, and is also the land described and released to said Thomas L. Harris, by indenture and mutual conveyance between him and Wm. F. Davidson, Executor of Abel Harris, and is the same described in the will and codicil of Abel Harris, devised by him to the said Thomas L. Harris, subject to the division provided for in said will and codicil.

"III. That a part of said land, to-wit: about 30 acres, is included in the tract of land, mentioned, described and conveyed in the deed from Wm. F. Davidson, Executor of Abel Harris, to said W. P. Fortune, and is also included in, and is a part of, the tract of land described and released unto said Executor, by Thos. L. Harris, by indenture between them, herein filed, and also in the will and codicil of Abel Harris, and is a part of the land directed by him in said codicil to be sold by his executor, after the provision therein provided for.

"IV. That the two tracts of land above mentioned, as described in deeds from Thos. L. Harris and Wm. F. Davidson, executors of Abel Harris, to W. P. Fortune, constitute the old Abel Harris place on Swannanoa river, and are included in the lands de-

scribed in the deeds from Mary Tate to Samuel W. Davidson, and from Samuel W. Davidson to Abel Harris.

"V. That Wm. P. Fortune, the plaintiff, and those under whom he claims, and those holding written deeds, by or through him, have been in the actual, open, notorious and exclusive possession of that part of the land sold by him to defendant, which is covered by said two tracts of land conveyed to said Fortune by Thos. L. Harris and Wm. F. Davidson, since the...... ......, 1829, under claim of title, and under known and visible lines and boundaries.

"VI. That W. P. Fortune contracted for and purchased the said tract of land conveyed to him by Thos. L. Harris, in the month of September, 1866, and that said Fortune gave a bond for title in the sum of $........., and that said Fortune paid the purchase money for said land on the 30th day of September, 1867, and obtained a deed of conveyance therefor.

"VII. That Wm. P. Fortune purchased the said land conveyed to him by Wm. F. Davidson, in the month of September, 1866, for the sum of $2,325, that said Fortune paid $1,000 of the purchase money in the month of September, 1867, and made payments on the remainder, at various times, until the year 1873 or 1874, when he paid the same in full. That at the time of the plaintiff's sale to defendant, and at the date of the commencement of this action, the legal title to said land was not in the plaintiff, but that the same was conveyed to him on the 28th day of March, 1883.

"VIII. That Abel Harris left surviving him his widow, Elizabeth Harris, and that said widow is now dead.

"IX. That the signature to the bond for title herein filed, is the signature of the defendant Charles Watkins, and that the same is his bond.

"X. That the remainder of the land described in the pleadings, and sold by the plaintiff to defendant, not included in the said conveyance from Thomas L. Harris and Wm. F. Davidson to said W. P. Fortune, is covered by said bond of the defendant

Chas. Watkins to the plaintiff W. P. Fortune. That said Fortune purchased said land from said Watkins on the 27th day of April, 1867, and fully paid the purchase money for the same, before the first day of January, 1868, but that no deed for said land has ever been executed to said Fortune by said Watkins.

"XI. That a parole agreement was entered into between the plaintiff and defendant, at the time the plaintiff re-sold said land covered by said bond, to the defendant, to the effect that the plaintiff should execute no deed for said land re-sold, but should surrender to the defendant his bond for title to said land, on the defendant's complying with the conditions of plaintiff's bond to him for the lands described in the pleadings.

"XII. That the plaintiff W. P. Fortune, married on the 7th day of July, 1859, and that his wife is still living, and that he has not been divorced from her.

"XIII. That the defendant knew at the time he purchased the lands described in the. pleadings from the plaintiff, that the plaintiff was a married man, and did not ask that the plaintiff's wife should join in the bond for title or deed of conveyance, to be executed in pursuance thereof.

"XIV. That the plaintiff has endeavored to obtain his wife's signature to the deed herein tendered to the defendant, but she has not signed the same or any other deed for said land, and has refused to do so.

"XV. That the plaintiff is seized of other lands, outside of the land sold to the defendant, of a value greater than one thousand dollars."

The referee arrived at the following conclusions of law :

"I. That the portion of the lands described in the pleadings, which is covered by deeds from Thos. L. Harris and Wm. F. Davidson to the plaintiff, having been in the actual, open, notorious and exclusive possession of said Fortune, and others under whom he claims, for more than thirty years, under known and visible lines and boundaries, a grant from the State for the same, is presumed, and also all necessary mesne conveyances to Mary Tate.

"II. That the deeds of Mary Tate to Samuel W. Davidson, from Samuel W. Davidson to Abel Harris, devise of Abel Harris to his executor and Thos. L. Harris, the deed of mutual conveyance between Wm. F. Davidson, Extr., and Thos. L. Harris, and deed from said Wm. F. Davidson and Thos. L. Harris to Wm. P. Fortune, are properly executed, duly proven and registered, and are effectual to pass the title to said land therein described to the said Wm. P. Fortune, the last vendee, and that said Fortune is seized in fee simple of that part of said land included in the land described in the pleadings and sold to the defendant, and has a valid, complete and indefeasible title to the same.

"III. That the said W. P. Fortune having purchased said land previous to the passage of the statute of March 2nd, 1867, restoring the common law right of dower, and before the statutes creating a homestead in lands, he can convey the same free from dower and homestead of his wife, without her joining in the deed of conveyance.

"IV. That the plaintiff having acquired the land covered by the bond for title to him from defendant, by purchase from the defendant, he, the said defendant, is estopped in this action to deny that he has title in himself for said land.

"V. That the land covered by said bond for title from defendant, having been purchased subsequent to the act of March 2nd, 1867, restoring the common law rights of dower, and the purchase money therefor having been fully paid, before the dower act of 1868-'69, the same is subject to the dower of the wife of the said W. P. Fortune, as defined and enacted in said statutes of March 2nd, 1867, and cannot be defeated or divested by a conveyance of said land, executed by said Fortune alone, or a cancellation of said bond; but that the same cannot be set apart to her as dower, while her said husband is seized of other lands of one-half its value, including the dwelling or mansion house in which he usually resides.

" VI. That the defendant having full knowledge of the marriage of the plaintiff at the time of his purchase from the plaintiff, he is not entitled to have a recission or cancellation of said contract, as to compensation for the right of dower of plaintiff's wife in the land covered by said bond.

" I conclude and decide, therefore, on the question of plaintiff's title, that the plaintiff is able to make a good, valid and indefeasible title to that portion of the land described in the pleadings, which is covered by deeds to him from Thos. L. Harris, and W. F. Davidson, Executors, free and discharged of any right of dower or homestead of his wife, without her joining in the deed of conveyance.

"That the plaintiff is able fully to comply with his part of the contract of sale by him to the defendant, of all the lands described in the pleadings, and that the deed herein tendered by him to the defendant, is in full compliance therewith, and that he is entitled to a specific performance of said contract and every part thereof, so far as the issue of title is involved."

The defendant filed the following exceptions to this report :

"I. The deed from Thos. L. Harris to plaintiff, dated Sept., 1867, then carried the legal title to plaintiff, and being a married man at that time, his wife, who is still living, by force of the statute, became entitled to dower, no matter when the contract of purchase was made.

" II. That this is so, more especially, for the reason that the whole of the purchase money was not paid until the time when the deed and legal title were acquired.

" III. That as to the W. F. Davidson part, the contract was made in 1866, the purchase money paid in 1874, and the deed obtained in 1883, and the plaintiff's wife had her right of dower in same.

"IV. That the contract contained in the bond from defendant to plaintiff, was after the dower act of March 2nd, 1867, and that therefore the plaintiff's wife was entitled to dower in that part of the land.

" V. That it matters not what other land the plaintiff may now have, he cannot affect his wife's marital rights in any part of any of his lands, without her consent.

" VI. That in addition to the dower rights of the wife, she has also her homestead rights, as given by Article X of the Constitution of the State, and they cannot be taken from her without her consent, given as prescribed in said Article.

" VII. That the Davidson deed was not acquired till 1883, nearly ten years after the contract to convey to Watkins.

" VIII. That the plaintiff never offered or tendered a deed till September, 1883, long after the suits were brought. "

The defendant also filed the following exceptions :

"In the trial before Judge GRAVES, only the issues which were to be passed on by the jury were submitted to and found by them.

"But the matters of equity, addressed to the Court as a chancellor, were not passed on, or attempted to be passed on by the Court, and we now ask that a reference be had to take testimony on those points, or such other course as the Court may direct, particularly with reference to whether the enforcement of the contract would be a hardship on the defendant, or unreasonable, iniquitous or unconscionable."

His Honor declined to give such reference, for the reason, among others, that the parties had an opportunity before Judge GRAVES at the last term, of tendering other issues than those passed upon by the jury, and also introducing testimony which appeared not to have been done.

The defendant's counsel then offered to show, by proof, that no such opportunity was had at the last term of the Court before Judge GRAVES, which was not allowed.

The Court thereupon over-ruled the defendant's exceptions, confirmed the referee's report, and rendered judgment in favor of the plaintiff for the amount of the two notes, and directed a sale of the premises for the satisfaction of said indebtedness, unless the defendant should otherwise discharge it before the first day

of next term. It was also referred to the Clerk to inquire and report the value of the rents and profits of the premises, since passing into the possession of the receiver, and used and enjoyed with his permission by the plaintiff, which amount it is declared shall be applied in reduction of the aforesaid indebtedness. From this judgment the defendant appeals.

*Mr. J. H. Merrimon,* filed a brief for the plaintiff.
*Mr. Theo. F. Davidson,* for the defendant.

SMITH, C. J. (after stating the facts). The exceptions to be reviewed, eight in number, may be resolved into four general propositions in law.

I. The deeds of Thomas L. Harris and William F. Davidson, though made in fulfilment of an executory agreement, entered into, in each case, while the .dower right of the surviving wife was confined to lands whereof the husband was seized and possessed at the time of his death, were in fact executed after the change restoring the right of dower as it existed at common law; and therefore these tracts were encumbered by the right of dower of the plaintiff's wife, contingent upon her survivorship.

II. The lands are further liable to her contingent claim of homestead, for the like reason.

III. The tract, mentioned in the defendants' bond for title given to the plaintiff, is similarly encumbered, inasmuch as the dower right attached to the equitable estate thus vested in the plaintiff, and could only be restored to the defendant by her deed relinquishing it.

IV. No deed was tendered until in September, 1883, after both suits had been instituted.

I. The force and legal effect of the agreement and the rights and duties arising under them, must be determined by the law prevailing when they were made. The right of the vendee to have such title as the vendor could *then convey,* and the capacity of the vendor to convey his estate, free from the claims of dower

or homestead afterwards given, in other words the absolute do-minion of the owner over his own property, is too well settled to be open to controversy, and we will only refer to some of the adjudged cases. *Sutton* v. *Askew*, 66 N. C., 172 ; *Wesson* v. *Johnson*, 66 N. C., 189 ; *Bunting* v. *Foy*, 66 N. C., 193.

The same doctrine applies to the homestead exemption. *Bruce* v. *Strickland*, 81 N. C., 267 ; *Reeves* v. *Haynes*, 88 N. C., 310.

From this it results, that a contract to convey, followed by a deed of conveyance, rests upon the same principle, and the deed is referable for its operation, to the time of the contract which it undertakes to comply with. *Bunting* v. *Foy, supra.*

These remarks dispose of the two propositions which embody the first three exceptions.

II. The fourth and fifth exceptions, comprised in the third proposition, rest upon a different basis, and are not entirely free from difficulty. The execution of the bond for title by the de-fendant to the plaintiff, transferred to him an equitable estate in the tract which it embraced, and to this the wife's inchoate right of dower at once attached, for, under the statute, she is endowa-ble equally in trust and legal estates. The Code, §2103. This right, contingent upon her surviving her husband, can only be divested by a deed executed by both, in the manner prescribed for the conveyance of a *feme covert's* real estate. Her refusal to unite in the deed, creates the obstacle in the way of his passing the estate in this part of the land unincumbered, as seems to be provided in the plaintiff's bond. The referee finds that it was agreed by parol between the parties, at the time of executing the bond for title and the notes for the remaining purchase money, that the plaintiff should not make a deed for this part of the land, but should, instead, surrender to the defendant his title bond, in executing the contract to convey, when the purchase money was paid.

While this oral understanding, part of the general agreement carried out in the execution of the title bond and of the notes,

cannot be allowed to control or modify the plaintiff's positive stipulation to make title to all the land, including this with the other, it is a proper matter to be considered in determining whether coercive relief shall be refused, because of an objection founded upon this defect. The parties understood that the restoration of title to this part, was to be effected by the surrender to the defendant for cancellation of the executory contract, and such is the legal effect of this action, as between the parties themselves, and the principle is applied to an unregistered deed, given up to the maker and destroyed, when no intervening interests have attached to be affected thereby. So it is decided in the cases cited in the plaintiff's brief. *Hare* v. *Jernigan*, 76 N. C., 471 ; *Miller* v. *Tharel*, 75 N. C., 148; *Davis* v. *Inscoe*, 84 N. C., 396 ; *Austin* v. *King*, 91 N. C., 286.

But aside from the uncertainty of any future disturbance from an assertion of the dower right; dependent as it is upon the wife's surviving her husband, and choosing to demand that it be laid off upon this particular part, while other land, with the mansion house upon it, is open to her claim, the defendant, as the referee finds, at the time, knew that the plaintiff was a married man, and did not require that his wife should be a party to the agreement, nor anything more of the plaintiff, than his execution of the bond, and that with an understanding that the return of his own covenant to make title should be a compliance with the plaintiff's contract as to this tract, the legal estate in which remained in himself.

A recent author, referring to a demand of the vendee for specific performance of a contract to convey land, uses this language: "If the vendee knows that the vendor is a married man, he knows that his wife is entitled to dower, and that she cannot be compelled to release her dower right; and entering into the contract with such knowledge, he is not entitled, within the doctrine as well established, to ask any thing more than the husband can give. It is the vendee's knowledge, and not any notion of making a new contract for the parties, which prevents the purchaser

from obtaining compensation. On the other hand, if the vendee entered into the contract in ignorance that the vendor was married, and under the supposition that the vendor could give an unencumbered title, then he ought to have a specific performance with an abatement from the price." Pomeroy on Specif. Perform., §461.

While this is said of a vendee seeking to have the vendor's contract executed, and does not apply to a case where the relation of the parties is reversed, and relief is demanded by the vendor against the vendee, it nevertheless asserts a proposition not altogether foreign to the present controversy. The present action looks to a judicial appropriation of property in the hands of a creditor, retained as security for his debt contracted in the purchase, to the discharge of the debt, if necessary.

As vendor and vendee stand in many respects in the same relation as mortgagee and mortgagor, when the estate is retained and held as a security for the purchase money of land, the action in this feature, is very like that of a proceeding for foreclosure and sale, and should be treated upon the same equitable principle.

We think, therefore, that the defendant will be sufficiently protected by the plaintiff's warranty deed, with covenants against encumbrances, present and prospective.

The last exception, based upon the plaintiff's failure to tender his deed before bringing suit, is untenable.

The rule is well settled, that it is sufficient if the vendor is able and prepared to convey title, even at the trial. *Hepburn* v. *Dunlop*, 1 Wheat. (U. S.), 179, 2 Story Eq. Jur. §777 ; *Hughes* v. *McNider*, 90 N. C., 249.

The refusal of the Judge to allow a reference for the purpose of taking testimony upon matters of equity addressed to him, after the submissions of issues of fact to the jury and their rendering responses thereto, and after the consent order of reference as to the plaintiff's title, rested in his discretion, and is not a reviewable error in law.

The parties went to the jury upon all controversies about the facts deemed by them to be material, and the equitable functions of the Court are called into exercise upon their findings. The application was not allowed, for the reason that an opportunity had been afforded for the submission of all inquiries, if deemed material, and not being made use of when offered, the defendant cannot, of right, afterwards require the re-opening of controversies that ought then to have been settled. The reason assigned sustains the action of the Court.

The last and remaining inquiry, is as to the effect of the finding, that the plaintiff employed " strategy in bringing about the agreement," a term used in the operations of armies, conducted by a skilful commander, and implying tact and art in military manœuvering, and is not very appropriate to the transactions of civil life. If artifice and fraud were resorted to and used in inducing the contract, it would not be enforced against the wronged party. But in the light of the further finding, that the land was at the time worh $5,000, nearly as much as the price agreed to be paid, and that the defendant was " competent to make the contract," it must be inferred that the jury meant to say in their verdict, that it was brought about by acts, and perhaps representations, not in themselves unlawful, but such as are common to persons entering into contract relations, each endeavouring to make the best terms for himself in the transaction. Putting this interpretation upon the verdict, in the use of the term, it interposes no impediment in the way of enforcing performance of the contract. If it was intended to convey a meaning incompatible with fair dealing, and approximating to that conveyed in the word " stratagem," which implies artifice, trickery, deception, and perhaps even positive fraud practiced, it is enough for us to say, we are unable, in connection with associate findings, to give it this sense, and thus debar the plaintiff of redress. The verdict determines the facts, and we are not at liberty to go outside of it in search of others. *Shields* v. *Whitaker*, 82 N. C., 516 ; *Leggett* v. *Leggett*, 88 N. C., 108 ; *Wessel* v. *Rathjohn*, 89 N. C., 377 ; *Worthy* v. *Shields*, 90 N. C., 192.

Upon a consideration of the whole case, we find no error, and must affirm the judgment. Modified as suggested in the opinion.

No error.                    Modified and affirmed.