GEORGE W. RAY et al. v. W. R. WILCOXON.

*Bond for Title—Specific Performance—Failure of Title—Consideration — Reconveyance — Redelivery of Deed — Married Woman—Joinder of Husband—Privy Examination—Unrecorded Deed—Construction.*

1. In an action to enforce a contract to convey land, specific performance will not be decreed where there is failure of title as to a part of the land.   The contract must be so modified as that there may be an equitable adjustment between the parties.

2. Where a father conveyed to his daughter a tract of land by deed, and she promised, before marriage and without consideration, to reconvey and redeliver the deed thereto: *Held,* such promise cannot be enforced.

3. Where, after marriage, in pursuance of such promise, she executed a deed reconveying to her father, and also surrendered to him his deed, and this was also without consideration, and there was no joinder of the husband, nor privy examination of the wife: *Held*, no title was conveyed.

4. An unrecorded deed confers such an estate as may be conveyed or sold under execution.

5. One D. made a bond to convey W. a tract of land upon his paying a sum of money at a time in the future agreed upon, with interest at six per cent. per annum. W. further agreed to maintain and clothe D. for his natural life, and to feed and take care of a horse for him. The contract contained this further stipulation: "Now, upon complying with the above contract on the part of W., said D. shall cause to be made a good deed to W. and his heirs and assigns to the above-described premises, and to pay W. $138 per year, it being the total amount agreed to, in lieu of the maintenance of said D.": *Held*, the proper construction of this instrument is, that W. was to have the land charged with the $138 per annum (the annual interest on the purchase-money), and that he be credited with this sum as the measure of the value of his services.

This was a CIVIL ACTION, tried before *Bynum, J*, at May Term, 1890, of ASHE Superior Court.

The action is brought by certain heirs at law of one John Dickson, and they allege that the defendant Wilcoxon (who married Elizabeth, a daughter of said John, and who, with an infant sister, is a defendant) having moved with his wife to the house of the said John (who lived alone), procured from him, by fraud and undue influence, a contract for the sale of certain land. In the course of the trial they abandoned the charge of fraud, and relied upon their allegation that there was a large balance due upon said contract, and asked judgment for the same.

The defendant Wilcoxon denied the fraud, and alleged that he had paid all the purchase-money.

The said contract is as follows:

"Know all men by these presents that I, John Dickson, of the county of Ashe and State of North Carolina, am held

and firmly bound unto W. K. Wilcoxon and his heirs, in the sum of $4,000, for the payment of which I bind myself, my heirs, executor and administrator. Signed and sealed this the 11th day of February, 1882.

"The conditions of the above obligation are such that whereas, the above bounden John Dickson hath this day bargained and sold, and contracted to sell and convey unto W. K. Wilcoxon and his heirs and assigns, all that tract or parcel of land whereon he now lives, in the county of Ashe and State aforesaid, on Buffalo Creek, adjoining the lands of Jacob Graybeal, Mrs. A. C. Davis, James Warren, Wm. Elliott and others. for the sum of $2,300, $1,000 to be paid on or before the 1st day of April, 1882, and the said Wilcoxon is to execute his promissory note for $1,300, bearing interest at six per cent. from the 1st day of April, 1882. And the said W. K. Wilcoxon agrees to maintain and clothe the said John Dickson in a comfortable manner during his natural life, and also is to feed and take of one horse for the said Dickson.

"Now, upon complying with the above contract on the part of the said W. K. Wilcoxon, the said John Dickson shall make or cause to be made a good deed in fee to said Wilcoxon, his heirs and assigns, to the above described premises, and pay to the said W. K. Wilcoxon the sum of $138 per year, it being the sum agreed to, the interest at six per cent. on the total amount of the purchase-money per annum for the said lands, in lieu of the maintenance of the said John Dickson, then the above obligation is to be void, otherwise to remain in full force and virtue.

"A. C. McEwen.                     JOHN DICKSON."
"M. J. GENTRY."


"The above interlineations were made after signing, by consent of parties.
"Attest: W. H. GENTRY."

The defendant then introduced and proved the execution of this paper:

"In regard to the contract heretofore made between me and W. K. Wilcoxon, it is and was a part of the same that I was to pay all doctor bills for medical attention that I might need while I live, and if I fail to keep my health and strength as I have at the time the trade was made, and I become so that I require more waiting on in my old age, then Wilcoxon was and is to be paid well for the same in a final settlement of my affairs, and to retain a proper sum out of what he may owe me for the land at that time.

"JOHN X DICKSON"<br>his mark

"Witness: J. W. TODD."
March 30th, 1885.

Defendant contended that the proper construction of the contract between Dickson and Wilcoxon was "that the said John Dickson was to pay the defendant W. K. Wilcoxon the sum of $138 per annum for his maintenance and keeping his horse, and the said sum was to be deducted annually from the $1,300 from the date of the contract until the death of John Dickson, and that in addition to this the said note of $1,300 was to draw no interest.

The Court held, and told the defendant's counsel at this stage of the trial that he would so instruct the jury, that the proper meaning of the said instrument was, that Wilcoxon was to have the use of the land and was to pay no interest on the $1,300 for the maintenance of John Dickson and his horse, and defendants excepted.

Defendant then introduced W. H. Gentry as a witness, who testified that he drew the contract between John Dickson and Wilcoxon. Defendant then insisted that there was a latent ambiguity in the contract, and proposed to ask the

witness the following question: "Was not the $138 per annum the estimate placed by the parties upon the keeping of Dickson and his horse, and was it not further understood that this $138 per annum was to be applied as a credit on the note of $1,300?"

Objection by plaintiffs, upon the ground that it was a patent defect, and parol testimony was incompetent to alter or explain. The Court so held, and construed the instrument as above stated, and sustained plaintiffs' objections. Defendant excepted.

The jury found that $1,300 of the purchase-money had been paid (the administrator of Dickson was made a party defendant, it being alleged that he was in collusion with said Wilcoxon, and had refused to sue).

Said defendant, for a further defence, alleged that, at the time of said contract, the said Dickson had only a life-estate in said land, and that the reversion belonged to his (Wilcoxon's) wife, who is the defendant Elizabeth. The said Elizabeth claimed the land under a deed executed to her by her father, the said John, before her marriage, and before the execution of the said contract.

It appeared that in July, 1878, John Dickson executed a deed in fee (reserving a life-estate) to the said Elizabeth of a *part* of the land embraced in the said contract of sale. The said Elizabeth was then living with her said father, and was unmarried. The jury found that there was no consideration for the deed.

There was evidence tending to show that on the morning of her marriage in January, 1879, she verbally agreed to reconvey the said land to her father, and to redeliver the deed to him. In consequence of advice, she declined to perform this agreement, but about a month after the marriage, in pursuance of said verbal agreement, she handed the deed back to her father, and executed a reconveyance of the land. Her husband did not join in the deed, nor was

her privy examination taken. Neither is it found that he consented to the redelivery of the deed, or that said reconveyance and redelivery were made upon any consideration. It seems that at some date (Elizabeth says about two years before the reconveyance, &c.) her father had given her a tract worth $300, called the "Dog Creek land." This land does not appear to be embraced in the contract of sale, and is not found to be a consideration for the aforesaid agreement and conveyance.

Elizabeth and her husband have been in possession of the whole tract since the death of John Dickson. The deed which Elizabeth had redelivered to her father was found among his papers, and was registered by her after the commencement of this suit.

The following is the judgment, and this embodies the issues, and the findings of the jury:

The following are the issues submitted to the jury, and their responses thereto:

1. Did John Dickson convey to his daughter Elizabeth, before her marriage with the defendant Wilcoxon, a part of the land in dispute, without any consideration? Answer—Yes.

2. Did the said Elizabeth, before her marriage, consent to give back and surrender the title to the land to her father? Answer—Yes.

3. Did the said Elizabeth, after her marriage, and in pursuance of her agreement to reconvey to her father, made before her marriage, in writing, reconvey the land to her father, her husband not joining in the conveyance, and without privy examination? Answer—Yes.

4. Did her husband, Wilcoxon, know, at the time of his purchase, that his wife had a deed to the land, and had reconveyed it to said Dickson? Answer—Yes.

5. Is the claim of the plaintiff, as to the thirteen hundred dollars, barred by the statute of limitations? Answer—No.

6. Did the said Dickson, before he conveyed the land in controversy, convey to his daughter Elizabeth the Dog Creek land without consideration, and does she still retain title up to this time? Answer—Yes.

7. What is the value of the Dog Creek land? Answer—Three hundred dollars.

8. What amount has the said Dickson advanced to his other children? Answer—We don't know.

9. What portion of the twenty-three hundred dollars, which Wilcoxon contracted to pay for the land, has been paid by him? Answer—Thirteen hundred dollars.

10. Was John Dickson indebted at the time of his death? Answer—Yes.

(This finding was set aside without objection.)

11. Did the plaintiffs, or any of them, demand of Warren, the administrator, to bring suit for settlement of the indebtedness of Wilcoxon before bringing this suit? Answer—Yes.

12. Did he refuse and decline to bring said suit? Answer—Yes.

13. Was there collusion between Wilcoxon and Warren, administrator of Dickson, touching the collecting of the debt sued on by plaintiffs in this case? Answer—No.

·The following judgment was rendered:

"And it being further admitted by the parties that neither the deed to the Dog Creek land, nor that made to the defendant Elizabeth to a part of the home tract, was registered until after the bringing of this action, and it also appearing and being admitted that the said John Dickson died on the 26th day of April, 1886, it is now considered by the Court that the plaintiffs recover of the defendant Wilcoxon the sum of $1,245, of which sum $1,000 is principal, and $245 is interest, with interest on said principal sum from the first day of this term until paid.

"And it further appearing to the Court that the deed executed by the said John Dickson to the defendant Elizabeth conveys only a part of the home tract, which said deed is registered in Book G G, page 493, and to which reference is hereby made for greater certainty; and it also appearing that the contract between the said John Dickson and defendant Wilcoxon obliges the said Dickson and his heirs to convey the entire tract to the said Wilcoxon and his heirs, it is ordered, adjudged and decreed that the amount of said judgment, principal and interest, is a lien upon the entire tract of land embraced in both deed and contract above recited, but the Court, marshaling the said securities according to equity and good conscience, doth decree that that part of said home place embraced in the said contract with Wilcoxon, and not embraced in the deed to the defendant Elizabeth, be first sold at the court-house door in the town of Jefferson, to the highest bidder, for cash, and if the proceeds should fail to satisfy the said debt and costs, that then so much of the residue of the home tract as may be necessary to satisfy the remainder of the debt and costs be sold.

" It is further ordered and decreed that Thomas K. Miller, Sheriff of Ashe County, be appointed a commissioner to sell said lands according to this decree, and that he advertise the same as required by law as to other sales, and make due return to the next August term of this Court, no advertisement to be made until after expiration of thirty days. And it is further considered by the Court that as to issue No. 10, in which the jury find that said estate was indebted, there was no evidence to support the affirmation of said issue, and that the same was contrary to the instructions of the Court, and the same is set aside and withdrawn.

" It is further considered by the Court that the defendants pay the costs of this suit, to be taxed by the Clerk, and this cause is continued for the report of the said commissioner, and for further directions."

Mr. Q. F. Neal, for plaintiffs.
Messrs. J. F. Morphew and W. H. Bower, for defendant.

SHEPHERD, J.:

1. As the plaintiffs have abandoned their allegation that the contract of sale was obtained by fraud, and as they are now seeking to enforce the same by collecting the balance of the purchase-money, it is necessary to inquire whether they, as the heirs at law of John Dickson, the vendor, can perform the said contract by executing a title to the lands mentioned therein to the defendant Wilcoxon, the vendee. This is important, for if, as is alleged, there is a failure of title as to a part of the land, the judgment of the Court must be so modified that there may be an equitable adjustment between the parties.

The said Dickson in July, 1878, conveyed a part of the land to his daughter, the defendant Elizabeth, who is the wife of the defendant Wilcoxon, and the question is whether, at the time of the execution of the contract of sale she had reconveyed, or in any way surrendered, her estate in the same to her father. The deed had not been registered, and on the morning of her marriage in January, 1879, she promised her father to reconvey the land and to redeliver the said conveyance. Upon being further advised she declined to perform her promise, and as there is no finding that it is based upon any consideration whatever (the Dog Creek tract not being connected with this transaction), it is entirely clear that it cannot be enforced, and that it did not in the least affect any interest which she had acquired. It appears, however, that after her marriage, in pursuance of the said promise she executed a deed reconveying the land to her father, and also surrendered to him the deed which he had delivered to her. This was also without consideration, and there was no joinder of her husband in the conveyance, nor was she privily examined as to its execution.

As the agreement made before the marriage was oral and voluntary it could not have been enforced against the wife, and its subsequent performance can, for that reason, derive no support therefrom. Beyond all question the reconveyance without privy examination or the joinder of the husband was void, and the point to be determined is, whether a married woman who is the grantee in an unrecorded deed can, by the sole and independent act of redelivery of the deed, practically convey the interests in land which she has acquired under the same.

If the unrecorded deed conferred upon her an *estate* in the land, either legal or equitable, it is plain that there is but one way by which she can convey it, and that is by deed and privy examination with the joinder of the husband. It is a well recognized principle that the law will not allow that to be done indirectly which it has forbidden to be done directly, and if a married woman can, by the simple redelivery of her unrecorded deeds, practically convey her equitable estates in realty, the very disability which the law has imposed will, to a great extent, be removed, and the safeguards which it has carefully thrown around her be broken down and abrogated.

It is contended, however, that an unrecorded deed confers no estate, and that it amounts to no more than a mere executory contract.

This, in our opinion, is a misconception of the law; for it is well established that such a deed is "a legal conveyance, and, although it cannot be proven in evidence until it be registered, and, therefore, it is not a present legal title, it has, as a deed, an operation from its delivery." RUFFIN, C. J., in *Walker* v. *Caltraine*, 6 Ired. Eq., 79. "It may," says the same high authority, "be set up in equity, whether voluntary or for value, and by it such an estate is conferred as may be sold under execution, and this even before the act of 1812." *Prince* v. *Sykes*, 1 Hawks, 87. Its owner is a

tenant of the freehold, and a recovery under a *precipe* against him would be good, and his widow may be endowed in the same. *Morris* v. *Ford*, 2 Dev. Eq., 412. Such a grantee is also deemed in equity to be seized of an equitable freehold. *Austin* v. *King*, 91 N. C., 286.

Elizabeth then having an estate in the land, could not, after her marriage, do any act which would, in effect, divest such estate without privy examination and the joinder of her husband. Such was held to be the law by the Supreme Court of New Jersey in *Wilson* v. *Hill*, 2 Beasley, 143, and the decision, we think, is well supported by reason, as well as the general policy of the law as to the disabilities of *femes covert*. In that case, apart from the peculiar circumstances surrounding the transaction, the Court laid down the principle that the voluntary surrender of an unrecorded deed by a married woman, unaccompanied by deed and privy examination, was ineffectual to divest her estate. Such a surrender could have been made by Elizabeth while she was a *feme sole* (*Austin* v. *King*, *supra*, and the cases cited), but we are very sure that her capacity to do so ended when the disabilities of coverture attached. It would seem strange indeed, if a *feme covert* could, by her independent act, divest herself of her real property when she is incapable of assigning her chattels without the written consent of her husband.

It is true that the defendant Elizabeth knew of the contract of sale, and made no objection, but it is well settled that such passive conduct cannot estop a married woman (*Weathersbee* v. *Farrar*, 97 N. C., 111), and especially is this so where it appears that she was entirely ignorant of her rights, and where there is nothing to show any fraudulent purpose on her part. We hold, therefore, that Elizabeth has never parted with the estate which she acquired under the deed of her father, and this instrument, being now registered, confers upon her the legal title to the land described therein.

2. As the case must be remanded for an adjustment of the equities growing out of the partial failure of title, and inasmuch as we are not informed whether the defendant desires to rescind the contract, or have it enforced as to the other part of the land, we do not feel warranted in passing upon questions which may contingently arise hereafter. We think, however, that it is proper, in aid of the further proceedings, that we should construe the contract of sale, the terms of which are seriously disputed by the parties.

The true construction, we think, is this: It was at first agreed that Dickson should sell the land to Wilcoxon for $2,300, $1,000 to be paid 1st April, 1882, and the balance by note for $1,300, with interest at six per cent. from April 1st, 1882, and Wilcoxon was to maintain Dickson in the manner prescribed. There is nothing ambiguous in this, but it was further agreed that Wilcoxon should pay Dickson $138 per annum, it being the interest at six per cent. per annum on the total amount of the purchase-money for said land, in lieu of the maintenance, etc., and this, fairly construed, we think, means that Wilcoxon was to have the land for $2,300, charged with $138 (the annual interest thereon), and that he was to be credited with $138 (equal to the interest), as the measure of the value of the services and charges of Wilcoxon in the maintenance, etc, of Dickson.

Had there been no failure of title the account should have been so stated as to charge Wilcoxon with $2,300 and $138 annually (the interest thereon), and credit him with $138 annually (the stipulated value of Dickson's maintenance), and with any sums that may have been paid on the purchase-money, with interest thereon to the death of Dickson, and the amount due Dickson's estate would have been the balance found to be due at Dickson's death, with interest at six per cent. from the date of that event.

It is hardly necessary to cite authority in support of the ruling of his Honor rejecting the oral testimony varying the terms of the said contract.

· The judgment is set aside and the cause remanded, to the end that further proceedings may be had looking to an equitable adjustment of the rights of the parties.

Modified and remanded.