PATTIE D. B. ARRINGTON v. J. P. AND B. L. ARRINGTON, Executors of A. H. Arrington, et als.

*Action to Subject Lands of Devisees and their Vendees to Payment of Decedent's Debts—Insolvent Estate—Lis Pendens—Constructive and Actual Notice—Bona Fide Purchaser without Notice.*

1. Under section 229 of *The Code*, which is a statutory substitute for the common law rule of *lis pendens*, it is unnecessary to file a separate and formal notice when the action affecting the title to land is pending in the county where the land is situated, provided the pleadings contain the names of the parties, the object of the action and a description of the land to be affected.

2. Where the designation of land in the pleadings is so definite that any one by reading it can learn thereby, either by description or reference, what property is intended to be made the subject of litigation, it is sufficient to constitute *lis pendens*.

3. Though a greater particularity is required when one of several parcels or a part of a single parcel of land is the subject of the litigation, yet, where the entire real estate of a decedent is, in the absence of personal assets, liable to be charged with the payment of his indebtedness and the plain object of the action is to subject the same, a purchaser will be affected with constructive notice as to any land situated in the county in which the action is pending, especially where the summons includes the devisees of the decedent and the complaint alleges that at the time of his death the decedent was seized and possessed of a large quantity of real and personal property which went into the hands of his executors, and that his children, named in the summons and complaint, are his devisees and legatees and each entitled to an equal share of *said estate.*

4. Although, where a suit affecting the title to real estate is prosecuted with diligence, the *lis pendens* continues until final judgment, or until canceled under direction of the Court, and no loss or destruction of the notice will affect its efficiency, yet, where the suit is transferred, by consent, to another county on the original papers and nothing is left on the files to inform a purchaser of the nature of the action and the property to be affected by it, the *lis pendens* fails and a *bona fide* purchaser will be protected.

5. A judgment against the executors of a decedent simply ascertaining the amount of the indebtedness and not being a lien upon his lands is not constructive notice of the insolvency of the estate, and a *bona fide* purchaser, for value, of land from the devisees, after two years from the grant of letters, not having *actual* notice of the judgment or of the insolvency of the estate, will be protected.

6. One who, with actual notice of the insolvency of the decedent's estate, purchased land from another, who, with like notice, had bought from the devisee, is not protected by section 1442 of *The Code,* but the land may be subjected to the payment of the indebtedness of the estate.

7. One who, in good faith, purchases property upon credit at a fair price from an insolvent debtor is a purchaser for value; therefore, one who, after two years from the grant of letters, for value and without notice of fraud in the devisee, purchases land from the latter and at once reconveys it as security for the purchase-money is a purchaser for value and protected by section 1442 of *The Code* against creditors of an insolvent estate.

8. One who, with actual notice of the insolvency of an estate, purchases land from one who, without such notice, bought from a devisee after two years from the grant of letters, will be protected by his vendor's want of notice.

9. T., after two years from the grant of letters on decedent's estate and during the pendency of a suit to subject the land to the payment of his debts, purchased the land from a devisee, and thereafter, and after the breaking of the *lis pendens*, sold to R., who had no constructive notice of the pendency of such action or actual notice of the insolvency of the estate. An attorney, to whom no fee or general retainer was paid, but with whom R. consulted, had actual notice of the insolvency of the estate, but did not communicate it to R., and did not act as the agent of R. in the purchase of the land: *Held*, that R. was a *bona fide* purchaser for value and is not chargeable with such attorney's knowledge otherwise and previously obtained of the former *lis pendens* and the insolvency of the estate.

10. The redelivery of an unregistered deed is not a reconveyance of the land, but only an estoppel on the grantee against setting up a title the evidence of which he has voluntarily destroyed.

11. The fact that a partition of lands has been made among devisees does not estop a legatee from enforcing his claim against the land, except as against purchasers in good faith for value and without notice.

(Discussion by Chief Justice SHEPHERD of *bona fide* purchasers in equity and under the Statute of Elizabeth).

CIVIL ACTION, heard upon exceptions to the report of J. M. Mullen, Referee, at Spring Term, 1893, of VANCE Superior Court.

*Mr. R. B. Peebles*, for petitioners S. C., A. H. and J. C. Arrington.

*Mr. R. O. Burton*, for Ricks, Tisdale, Battle, trustee, and others.

SHEPHERD, C. J.: At the Fall Term, 1874, of the Superior Court of Franklin County, the plaintiff recovered a judgment for the sum of $9,096.95 against L. N. B. Battle, Thomas J. A. Cooper, and the executors of A. H. Arrington, deceased. The said Battle was the guardian of the plaintiff, and the said Arrington and Cooper were sureties to the bond of said Battle as administrator of one Evans, the latter being a surety to the guardian bond of the said Battle.

The present action was instituted in the Superior Court of Nash County, at the Fall Term, 1879, for the purpose of enforcing the payment of the said judgment against the executors and devisees of the said Arrington, and also against the representatives of the said Cooper.   As there is no exception, so far as this appeal is concerned, relating to the estate of said Cooper, now deceased, we will, for the purposes of the discussion, treat the action as if it had been brought alone against the real and personal representatives of the said Arrington.   The complaint, among other things, alleges as follows: "That A. H. Arrington is dead, leaving a will, which has been duly proved in Nash county, and John P. Arrington and B. L. Arrington are duly appointed and qualified executors thereof.   The defendants John P. Arrington, Mary Thorpe, Thomas Arrington, Samuel Arrington, A. H. Arrington, George Arrington, Henry Arrington and Joseph Arrington are devisees and legatees under said will, and are each entitled to an equal share of said estate.   *   *   *   That A. H. Arrington, at the time of his death, was seized and possessed of a large quantity of real and personal property, of great value, which went into the hands of his said executors."   The prayer is for an account of the personal assets, and, if they should be found insufficient to pay the indebtedness, that the real estate of the said Arrington be sold and converted into assets for that purpose.

At the Fall Term, 1882, the case was removed to Vance county and, after several orders of reference and reports of referees (it having been found that a sale of the real estate was necessary), it was at May Term, 1891, referred to J. M. Mullen, "to state the account of John P. Arrington, as executor of A. H. Arrington, since the rendition of his account, which was confirmed at May Term, 1885, and also to ascertain how contribution should be made, not only between the two estates (the estates of Arrington and

Cooper), but also between the devisees of A. H. Arrington and those to whom some of said devisees have conveyed land devised by said testator." It was also directed by the order of reference that "all persons who have so acquired any of the testator's real estate should be notified by the said referee of the time and place of the hearing before him, and should be allowed to come in and make themselves parties to this action before him."

Under this order of reference Samuel L. Arrington, A. H. Arrington and Joseph C. Arrington, who still own their respective shares in the real estate as devisees of their deceased father, were permitted to file an answer. This answer sets forth the various tracts allotted to each of the devisees, the disposition which has been made of them and the names of the purchasers. The answer also alleges that Samuel L. and Joseph Arrington are each entitled to a specific legacy of $150, which they claim is a charge upon all of the real estate. These defendants prayed that it be ascertained what lands are liable to be sold; that each tract should be charged with its *pro rata* part of the indebtedness, and for other and further relief. To this answer Ricks, York and others, purchasers from the other devisees, responded, alleging that they, or those under whom they claimed, were "*bona fide* purchasers for value, and without notice," and that they purchased more than two years after the qualification of the executors of said Arrington. They deny that the general indebtedness or specific legacies are a charge upon their lands, and they also plead the statute of limitations. Many exceptions were made by the various parties to the report of the referee, and the rulings of Judges Bryan and Shuford upon the same. It was found by the referee that the sales of said tracts were all made more than two years after the qualification of the executors, and that several of the purchasers were *bona fide* purchasers, for value, and without notice. *The Code,* §1442.

ARRINGTON *v.* ARRINGTON.

1. The first important question to be considered is whether those who purchased lands lying in the county of Nash, after the beginning of this action and the filing of the complaint, are affected with constructive notice. In the case of *Collingwood* v. *Brown*, 106 N. C., 362, we had occasion to consider at some length the provisions of section 229 of *The Code*, in its relation to what is sometimes called the "common law rule of *lis pendens*." Our conclusion was that, as to real property, there is but one rule of *lis pendens* in this State, and that the statutory provision is a substitute for the common law rule previously followed by our Courts. It may, therefore, be assimilated in many respects to that species of notice known as "constructive notice," and the requirements of the statute must be fully complied with. We held, however, that, where the action is pending in the county in which the land is situated, it is unnecessary to file a separate and formal notice, provided the pleadings contain the names of the parties, the object of the action and a description of the land to be affected.

It is unquestionably true, as contended by counsel, that the property must be "pointed out in the pleadings in such a manner as to call the attention of all persons to the very thing, and warn them not to intermeddle." But it is "not necessary that the land should be described by metes and bounds; certainty to a common intent—reasonable certainty—is sufficient." 2 Pom. Eq. Jur., 634. "Thus it will be seen that although it is necessary in order to constitute *lis pendens* that the proceedings should, directly or indirectly, designate specific property, yet, where the description is so definite that any one reading it can learn thereby, either by the description or reference, what property is intended to be made the subject of litigation, it is sufficient." Benn. Lis Pend., sec. 93; 1 Freem. Judgm., sec. 197. As illustrative of the principle deducible from

the foregoing authorities we may refer to the case of *Green*
v. *Slayter*, 4 Johns. Ch., 39, where the description was
"divers lands in Crosby's Manor," held in trust by the
defendant for the complainant. "It was decided," says
Bennett, *supra*, "to be the duty of the public to inquire of
the defendant, and thus ascertain that the property involved
was covered by the description.   *   *   *   That is to say,
it becomes the duty of the purchaser to avail himself of the
information given by the pleadings, by the use of reasona-
ble diligence, to ascertain, at his peril, whether the property
he is about to purchase is the same involved in the suit."
"Certainty to a common intent is all that a chancellor
should require." *Le Neve* v. *Le Neve*, 2 White & T. Lead.
Cas. Eq., 197, note.

We have examined the cases cited by counsel, and are
of the opinion that they do not conflict with the views just
quoted.   Much greater particularity is required where one
of several parcels, or a part of a single parcel, of land is the
subject of the litigation.   In such cases there should be a
sufficient description to identify in some manner the specific
land to be affected; but where, as in this case, the entire
real estate of a decedent is, in the absence of sufficient per-
sonal assets, liable to be charged by the law with the pay-
ment of his indebtedness, and where it can be clearly seen
that the object of the action is to subject the same, it can-
not, we think, with any show of reason, be insisted that a
purchaser should not be affected with constructive notice as
to any land situated in the county in which the action is
pending.   There is certainly enough to inform the pur-
chaser that the property he is purchasing may be necessary
to pay the indebtedness of the estate, and this is sufficient
to bring the case within the principle of the rule as indi-
cated by the authorities to which we have referred.

It may be further observed that the summons in this

action includes the devisees of the said Arrington, and the complaint alleges, as we have seen, that he was at the time of his death "seized and possessed of a large quantity of real and personal property, which went into the hands of his executors." It is further alleged that the children above mentioned are "devisees" and legatees under the will of said Arrington, and that they are "each entitled to an equal share of said estate." The necessary inference is that all of the estate, both real and personal, was devised and bequeathed to the said children, and that it is this real estate, and none other, which is sought to be subjected in this action. If this be not so, it is difficult to understand why the said children are made parties; and, if they do take all of the real estate of the said Arrington, it is equally difficult to understand why an examination of the will, which is expressly referred to in the complaint, would not disclose—if, indeed, it were necessary—a more specific description of the said property. It may also be remarked that the reference to the land as that "which went into the hands of his (Arrington's) executor," while technically incorrect, is an indication that the lands referred to were those mentioned in the will.

Taking the whole complaint, and considering the character of the action, we cannot entertain a doubt that those of the defendants who purchased lands in Nash county after the filing of the complaint, and before the removal of the cause to Vance county, are affected with constructive notice.

The ruling of his Honor upon this point must therefore be sustained.

2. Another serious question to be determined is whether the defendants who purchased lands in Nash county after the removal of the case are also bound by the *lis pendens*. We have but little doubt that, had this action been removed

in the usual manner, the *lis pendens* would not have been destroyed. Without entering into a general discussion of the subject, it is sufficient to say that where the suit has been prosecuted with proper diligence the *lis pendens* continues until the final judgment (1 Beach, Mod. Eq. Jur., 440, and Benn. Lis Pend., sec. 78), or until it has been canceled under the directions of the Court. *The Code*, §229. The mere loss or destruction of the notice will not affect its efficiency, if the statute has been fully complied with. Benn. Lis Pend., sec. 330. But, while all this may be true, the Courts will nevertheless refuse to enforce the rule unless the party invoking it clearly brings himself within its true spirit and principle; and therefore if, by any act of his own, he has, contrary to the usual course of the Court, consented to, or been instrumental in, the removal from its files of the notice of *lis pendens* (or, as in this case, its substitute, the complaint), leaving nothing whatever upon the record which could inform a purchaser of the nature of the action, and the property sought to be subjected, it must follow, according to every principle of equity and fair dealing, that the purchaser will be protected. The rule *lis pendens*, while founded upon principles of public policy and absolutely necessary to give effect to the decrees of the Courts, is nevertheless, in many instances, very harsh in its operation; and one who relies upon it to defeat a *bona fide* purchaser must understand that his case is *strictissimi juris*. Certainly he cannot claim its protection when, as we have observed, he has done anything that prevents the purchaser from learning the nature of his claim by an inspection of the records. That the doctrine of estoppel may be invoked in bar of the enforcement of the rule is well settled. Bennett, *supra*, sec. 110. It is applied in cases of negligence in failing to prosecute the action, and also where the plaintiff makes such a

disposition of the case that it may be inferred that the right to enforce the *lis pendens* has been abandoned. Bennett, *supra*, secs. 109–111, note. While we are unable to find any decision directly in point, we are satisfied that the views we have expressed, as applicable to the question under consideration, are well sustained by the principle just stated. If the neglect to fully prosecute a suit, so as to lead a purchaser to infer that the *lis pendens* is abandoned, will work an estoppel, it would seem plain that the voluntary removal of everything from the Court which could possibly give any information as to the object of the action should have the same effect.

We need not pause to consider the justness of the criticism to be found in some of the text-books upon the use of the term "constructive notice" in connection with the doctrine of *lis pendens*. It is doubtless true that, generally speaking, the doctrine is really not founded upon notice at all, but upon considerations of a stern public policy, which does not permit a party litigant to convey to others the subject of the litigation, so as to prejudice the rights of the opposite party. *Bellamy* v. *Sabine*, 1 De Gex. & J., 566. This is evident from the fact that originally the rule was enforced in cases where a *subpœna* was issued before the filing of the bill, or of any other paper from which the public could glean any information whatever as to the subject-matter of the threatened litigation. Where, however, the statute or a rule of Court requires the filing of a bill as a prerequisite of jurisdiction, there is, says Bennett (Lis Pend., sec. 18), "a warrant for using the terms 'notice *lis pendens*' and 'notice of *lis pendens*.'" And very plainly are these terms, as well as that of "constructive notice," permissible where, as in this State, the *lis pendens* can only exist, as to real property, by a strict compliance with the terms of the statute, and where the statute itself declares

that the notice, when properly filed, shall be "constructive notice." *The Code*, §229. The fundamental principle of *lis pendens*, therefore, being no longer founded, in this State, upon a public policy which gives effect to the decrees of the Courts, regardless of the fact whether an inquiring purchaser can acquire information by an inspection of the record, but being founded upon the principle that by such an inspection he can actually acquire information, it must necessarily follow that the *lis pendens* is entirely dependent upon the filing of the notice; and, if this be· so, it must also follow that its efficacy will be destroyed when it is substantially withdrawn by the consent of the parties. It is true that the notice, when filed, is, as in the case of the common law *lis pendens*, in itself notice, or rather dispenses with actual notice; but it was in consonance with the spirit long evinced by the courts of equity, to postpone the operation of the rule until the bill was filed, that these statutory provisions have been very generally enacted. While recognizing the *lis pendens* as absolutely binding in its effect, the rigor of the rule has been softened by the equitable requirement that the means of information should be accessible to those who are careful enough to search for it.

These principles are easily applied to the facts appearing in the record. This action is entitled "Pattie D. B. Arrington against J. P. and B. L. Arrington, executors, and others"; and there appears nothing else on the docket from which the character of the action or names of the · parties, other than the executors, can be ascertained. It is clear, therefore, that, in the absence of the complaint, there was nothing on the records of the Court which could amount to a *lis pendens* under our statute.

At the Fall Term, 1882, the following order, entitled as above stated, appears on the docket: "This cause, on

motion of plaintiff, supported by affidavit, is removed; and, by consent of counsel for plaintiffs and defendants, Vance county is designated as the county to which it should be removed, and that the original papers in the cause be transmitted, instead of a transcript, and said cause not to be called before Thursday of the next term of Vance Superior Court." Thus it appears that all of the papers from which a purchaser could derive any information that the devisees of Arrington were parties, or that their land was to be subjected, were, by consent of all the parties who are interested in sustaining the *lis pendens*, virtually withdrawn from the files of the said Court. The complaint, so far as this question is concerned, was simply a substitute for the notice required by *The Code;* and its withdrawal, under the circumstances, had the same effect as the voluntary withdrawal of any other notice of *lis pendens*. It seems to us that it would be pushing the doctrine of statutory *lis pendens* far beyond its reasonable limits to enforce it in favor of those at whose instance every vestige of information required by the statute was removed, and against a purchaser who, for that reason, could not, by the most diligent inspection of the records, have discovered that the land he was purchasing was sought to be subjected to the payment of the indebtedness of the said estate. We are therefore of the opinion that there was error in the ruling that those of the defendants who purchased lands in Nash county after the removal of the cause were affected with constructive notice of the purpose of this action.

3. There being no *lis pendens* after the removal, it is insisted that, independent of the statutory *lis pendens*, a pending action or a judgment against the executors alone would, in itself, amount to constructive notice, and that the purchasers were thereby put upon inquiry to ascertain whether the estate was insolvent, so that a resort to the

real property would be necessary. As illustrative of this contention we may refer to the Nancy Bunn judgment; which was confessed in the Superior Court of Nash County in 1869 by the said A. H. Arrington, deceased, and revived against his executors in 1875. This judgment simply ascertained the amount of the indebtedness, and was no lien upon the lands at the time of the various purchases. It was not incumbent, therefore, upon the purchasers to examine the records for this judgment; and, unless they had actual notice of its existence, it could not put them upon inquiry as to the condition of the estate. After the lapse of two years purchasers, in the absence of actual or constructive notice, have a right to assume that the estate has been settled. Notice is either actual or constructive, but the line of demarkation between them is not always preserved; and, indeed, there is often a difference of opinion as to whether notice arising in a certain way belongs to one class or the other. "That notice which is imputed to a person because he is shown to be conscious of having the means of knowledge, although he does not use them, is treated by some Judges and text-writers as a branch of actual notice, and is called by them 'implied notice,' but by others it is treated as constructive notice. Generally this is not a matter of importance, for, when established, constructive notice has the same effect as actual notice." 1 Beach. Mod. Eq. Jur., 347. It is unnecessary at this time to attempt a classification, but reference may be made to Mr. Pomeroy's work on Equity, in which he treats the subject with much learning and ability. 2 Pom. Eq. Jur., sec. 5. Assuming it to be constructive notice, it is not, like *lis pendens*, notice in itself; but it is entirely dependent upon actual notice brought home to the party of such facts which, if followed up with reasonable care and diligence, would lead to a discovery of the truth concerning the claim.

or interest of another.  When the information is of this character the constructive notice is irrebuttable, and as effectual as that species of constructive notice to which *lis pendens*, registration, and others of a similar conclusive character, belong.  The cases cited by counsel do not conflict with this view, nor do they establish the proposition that a judgment of this nature, without actual notice of its existence, is constructive notice of the insolvency of the estate.  Those purchasers, therefore, who purchased after the removal of the cause, and who had no actual notice of the existence of the judgment, the pendency of this action or of the insolvency of the estate, will be protected, provided they are *bona fide* purchasers for value.  The law favors the alienation of real property, and has fixed a limited period within which it must await, in the hands of the heirs or devisees, the possible demands of the creditors.  After the expiration of this period it may be purchased with impunity by a *bona fide* purchaser for value and without notice.  It is very improbable that a want of sufficient personal assets will not be discovered within two years after the administration, and the creditors may always, within a reasonable time, avail themselves of the statutory creditors' bill against the personal and real representatives.

It is not in accord with the policy of the law that the right which it gives the heir or devisee to convey after two years shall be impaired, as it will be if the purchaser is to be affected with constructive notice, under the circumstances relied upon in this case.

4.  These general principles being established, we will now proceed to a more particular examination of the exceptions addressed to the rulings of the Court below.

First, as to the Hilliard tract: It appears that this tract had, under partition proceedings between the devisees, been allotted to John P. Arrington, and that on November 5,

1876, the said Arrington sold twenty acres thereof to one W. L. Thorpe, who had actual notice of the insolvency of the estate. The said Thorpe, on February 14, 1886, conveyed the lands to B. H. Bunn, trustee, who at the time of his purchase had actual notice of such insolvency, and also of the pendency of this action. There can be no question but that this land is not protected by the proviso of the statute, and that it should be subjected to the payment of the indebtedness of the estate, unless it is exonerated by reason of a certain deed of release executed by the plaintiff on the 30th of October, 1878; and that the said deed did not have this effect is decided in *Arrington* v. *Arrington*, 102 N. C., 491, and it is therefore unnecessary to enter into a further discussion of the question.

Second, as to the Marnes tract: This tract, in the partition proceedings, was allotted to R. W. Arrington, and conveyed by him to W. M. York on July 16, 1886. It is found that York was a purchaser for value, and that he purchased without actual notice. As the action had been removed to Vance county before the purchase, and as we have seen that such removal destroyed the *lis pendens* in Nash county, where the land is situated, it necessarily follows that there was error in holding that the said York and C. W. Grandy & Son, who purchased from him, were affected with constructive notice.

Third, as to the Fox and Harrison tract: This tract was also a part of the real estate allotted upon partition to R. W. Arrington, and it was sold and conveyed by him to T. F. York on the 28th of February, 1885, in consideration of the sum of $3,820. For this amount the said York executed his notes to the said Arrington, and immediately reconveyed the land to secure the payment of the same. As the sale was made after the removal of the action to Vance county there was no constructive notice, and it is

found as a fact that York had no actual notice of any out-
standing indebtedness of the estate.   It is not suggested
that the conveyance was made by R. W. Arrington for the
purpose of defeating the claims of his father's creditors, nor
that York knew of any such purpose, if, in fact, it existed.
Purchasing, then, under such circumstances, thirteen years
after the qualification of the executors, and, as found by the
referee, for a fair price, we must assume that he purchased
in good faith; and the chief question, therefore, which was
argued by counsel and is to be determined by us, is whether
he is a purchaser for value within the proviso of the statute.
If he is such a purchaser it must follow that Jacob Battle,
who purchased for value in 1889, as trustee, under a decree
of foreclosure, would hold the land free from the claims of
the creditors, although he had actual notice of the pendency
of this action, and the insolvency of the estate.   This prin-
ciple—that a purchaser with notice, from one without
notice, is protected by his vendor's want of notice—is a
familiar one, and does not seem to be seriously questioned
by counsel.   *Bassett* v. *Norsworthy*, 2 White & T. Lead. Cas.
Eq., 31, notes; 1 Bigelow, Frauds, 402; *Taylor* v. *Kelly*, 3
Jones' Eq., 240; *Wallace* v. *Cohen*, 111 N. C., 103.   The in-
quiry, then, is, Was York a "*bona fide* purchaser for value,"
within the proviso of section 1442 of *The Code?*   It is
insisted by counsel that such a *bona fide* purchaser must be
one who meets all of the conditions required in equity, and
especially in that he has actually paid the purchase-money
or its equivalent, or entered into some irrevocable obliga-
tion, or executed negotiable paper which has been trans-
ferred before maturity.   *Southerland* v. *Fremont*, 107 N. C.,
565.   In other words, the whole of the purchase-money
must have been substantially paid before notice; and if
this is not done the purchaser takes the land impressed
with the equity sought to be enforced, and is protected only

*pro tanto*—that is, to the extent of the money actually expended prior to the notice. He must lose his bargain, however fair the price may have been at the time of the purchase, upon notice, perhaps many years afterwards, that the estate is insolvent. After very serious consideration, and a careful examination of the authorities cited, we have concluded that such is not a proper construction of the statute; and we are of the opinion that the purchaser contemplated by its provisions is, in respect to the consideration, to be assimilated to a purchaser for value under the statute of 13 Eliz. (*The Code*, §1548). The language of the two statutes, in so far as it bears upon this question, is substantially the same, the words "good consideration" having always been construed by the Courts of England and this country to mean "valuable consideration." 2 Bigelow, Frauds, 443, and *Young* v. *Lathrop*, 67 N. C., 63. And there is a striking analogy between a purchaser from an heir at law or devisee and a purchaser under the statute of Elizabeth, whereas there seems to be none between such a purchaser and a "*bona fide* purchaser" in equity. In the latter case the rule in equity, with its peculiar requirements, is usually invoked in favor of one who is seeking the enforcement of some equity which has attached to, or may, under various equitable principles, be impressed upon, the land; but it is never applied in favor of a mere general creditor, who possesses nothing in the nature of an equitable charge or lien. In the present case the creditors never had any lien upon the lands of the devisees (*Davis* v. *Perry*, 96 N. C., 260), but they had a legal right merely to subject the lands necessary to the payment of their indebtedness; and this legal right was absolutely protected for a period of two years by the provision of the statute declaring void any alienation by the real representative, as against such creditors. The creditors having nothing in the nature of an

equitable charge or lien, their position after the expiration of two years must be regarded, in respect to the rights of purchasers, as similar to that of a general creditor; and the conveyances to such purchasers ought to be sustained upon the same consideration as would be sufficient under the statute of Elizabeth. This construction, as we have before remarked, is in harmony with the policy of the law, which condemns unnecessary restriction upon the alienation of real property. It can never work injustice to the vigilant creditor (and it is he, only, "whom the law loveth"); and it encourages alienation by the assurance it affords the purchaser that he can keep the land at the contractual price, leaving the creditor to subject the purchase-money, or its securities, in the hands of the vendor.

Under the view we have taken it only remains to be determined whether the defendant York was a purchaser for value under the statute of Elizabeth; and upon this point we have direct authority in the case of *Beasley* v. *Bray*, 98 N. C., 266, in which it was held that one who, in good faith, purchases property upon credit, at a fair price, of an insolvent debtor is a purchaser for value.

The principle declared is thus stated by Judge Seymour in his Digest: "The fact that an insolvent person makes a conveyance of all his property to a person possessing no other property of his own, and takes his notes in payment therefor upon long credit (one, two, and three years), is not sufficient, in the absence of a finding by a jury of fraudulent intent on the part of the vendee as well as the vendor, to authorize a Court to adjudge the conveyance fraudulent." The decision goes far beyond what is necessary to sustain the purchase in the present case, as it does not appear that the vendee was insolvent; and it is also to be observed that he did not give simply his notes for the purchase-money, but

secured them by a mortgage on the property. It having been found that the said defendant purchased without notice, and in good faith, and the consideration being sufficient, we must hold that the exception to the ruling of the Court ordering the sale of the land purchased by him should be sustained.

Fourth, as to the home tract: The findings of the Court are as follows: "On the 6th day of January, 1881, T. M. Arrington and wife executed a deed to James T. Tisdale and his heirs for the 317 acres of the home tract allotted to said T. M. Arrington. None of the purchase-money has been paid, but Tisdale gave to Arrington his notes therefor, and, to secure the same, immediately reconveyed the land to Arrington, by way of mortgage. The mortgage deed was immediately registered in Nash county. The deed from Arrington to Tisdale was acknowledged and handed to the Register of Deeds. It does not appear that any fees· were paid or tendered, or demanded, but the Register promised to register the deed. It has never been recorded and is lost. At the time Tisdale agreed to purchase the land, by mutual consent, John H. Thorpe acted as attorney for both Tisdale and Arrington; and Thorpe, between the years 1872 and 1877, acted as attorney for the executors of A. H. Arrington, and from that time till the 19th day of December, 1883, had actual knowledge of the judgment of Pattie D. B. Arrington against the estate of A. H. Arrington, mentioned in the pleadings. Prior to December, 1883, T. M. Arrington borrowed some money from R. H. Ricks, and executed his notes to Ricks therefor, and as collateral ·security deposited with him at the time of borrowing the Tisdale notes given for the purchase-money aforesaid. Tisdale remained on the land about three years, using the rents and profits; and on December 18, 1883, he, Arrington, and Ricks agreed that Ricks should take the land for

the debt Arrington owed him—it being a fair price—and, in pursuance thereof, Ricks surrendered to Arrington his notes, and Arrington surrendered to Tisdale his notes, no part of which had been paid, and Tisdale made to Ricks a fee-simple deed to the land. On discovering that the deed to Tisdale had never been registered, Arrington and wife conveyed the land to Ricks by deed dated September 9, 1891, which was registered September 10, 1891. Before and at the time the said Ricks took the deed from Tisdale, he (Ricks) consulted the said John H. Thorpe in reference to the title to the said 317-acre tract. Ricks paid no fee to Thorpe in the matter, and no general retainer; but, being a neighbor, Ricks generally consulted Thorpe about his business, and so consulted him about this matter. The money loaned Arrington by Ricks—evidenced by Arrington's notes, which Ricks surrendered—and interest accrued, was a fair price for the land. Thorpe did not actually communicate his knowledge to Tisdale or Ricks, and they had no actual knowledge of the indebtedness, other than the knowledge of the attorney, Thorpe. Upon the foregoing special facts found the Court held that neither Tisdale nor Ricks was a *bona fide* purchaser of the said 317-acre tract, for value and without notice, and the said Ricks and Tisdale excepted."

Under the principles we have enunciated in considering the exceptions relating to the Fox and Harrison tract it is clear that, the price being fair, Tisdale and his grantee, Ricks, were both purchasers for value. Tisdale, however, having purchased before the removal of the cause, was, without reference to the knowledge of the attorney, affected with constructive notice; and the question is whether Ricks, who purchased from him some two years afterwards without actual knowledge, and after the removal, is also affected with notice. It is insisted that he cannot avail

himself of the want of actual notice, because, at the time of his purchase, his grantor, Tisdale, had not acquired the legal title. This rule as to the acquisition of the legal title is frequently of very important application to the case of a *bona fide* purchaser in equity; but, as we have seen that such a purchaser is not contemplated by the statute, it becomes immaterial whether Tisdale acquired the strict legal title or not. The unregistered deed (to say nothing of the estoppel worked by the acceptance of the mortgage by his grantor) was a conveyance at least of the equitable estate, and not merely of an equity, and was good as against all persons except subsequent purchasers and creditors. It might be set up in equity, says RUFFIN, C. J., "whether voluntary or for value, and by it such an estate is conferred as may be sold under execution." *Price v. Sykes*, 1 Hawks, 87. "Its owner is a tenant of the freehold, and a recovery under a precipe against him would be good, and his widow may be endowed in the same." *Morris v. Ford*, 2 Dev. Eq., 412. Such a grantee is also deemed, in equity, to be seized of an equitable freehold. *Austin v. King*, 91 N. C., 286; *Ray v. Wilcoxon*, 107 N. C., 514. See also, *Jennings v. Reeves*, 101 N. C., 447. Arrington having the legal title, and not a mere equity, and Tisdale having acquired of Arrington the equitable ownership for a fair consideration, Tisdale must be deemed to have purchased under a conveyance, as mentioned in the statute; and Ricks is therefore entitled to avail himself of a want of notice, although his grantor, the said Tisdale, may have had notice.

Before passing from this subject it may be of interest to observe that it is not true that an unregistered deed is, as has been said, a mere executory contract, and that for this reason the title revests in the grantor upon redelivery. It is, as we have stated, a conveyance of an equitable estate; and such an estate in land, being within the statute of

frauds, cannot be conveyed in such an informal manner. The reason that a grantee cannot claim under such a deed, when he has redelivered it, is because he will not be permitted to give evidence of that which he has voluntarily destroyed; and he is therefore estopped from ever setting it up, either in a court of law or equity.

It is further insisted by the learned counsel that Ricks was affected with constructive notice by reason of the knowledge of his attorney. It appears that Mr. Thorpe acquired his information of the indebtedness of the estate while acting as attorney for the executors between the years 1872 and 1877, and that this information was still in his mind at the time Ricks consulted him in 1883; but for some reason (perhaps because it did not occur to him that the real estate would ever be required to pay such indebtedness) he did not communicate his knowledge to Ricks. Very much was said on the argument in respect to the time and manner in which the knowledge must have been acquired by an agent, in order to affect his principal, it being insisted that it must have been acquired in the course of the particular transaction in which the agent was employed. There is an apparent diversity of opinion upon this point in the text-books and judicial decisions. See Pom. Eq. Jur., 666; 1 Jones, Mortg., 586; Weeks, Attys. at Law, 237, and the notes in *Le Neve* v. *Le Neve*, 2 White & T. Lead. Cas. Eq., 109—and also a discussion of the subject by BRADLEY, J., in the Case of Distilled Spirits, 11 Wall., 356. In the latter case the agent was authorized to purchase for the principal, and it was held that the latter was affected with notice present to the mind of the agent at the time of the purchase, although he had acquired his information in a prior transaction. This, with some limitations, seems to be the true rule in such cases. So, in the case of *Hulbert* v. *Douglas*, 94 N. C., 122, the point determined by this Court was that there was

some evidence "that the attorney was acting for the purchaser in the sale of the note." Our case is quite different, and we do not propose to enter into an elaborate discussion of the general subject. It is sufficient to say that, concedceding that Mr. Thorpe was really consulted as an attorney, and not merely as a friendly neighbor, in reference to the title, he was not, in our opinion, such an agent as is embraced in the principle relied upon. Mr. Pomeroy (section 668) says (and in this he is fully sustained by the leading authorities) that, "whenever a solicitor or attorney at law is brought within the operation of the rule he must be employed in some other capacity than as a mere professional and legal adviser. He must be employed to represent his client in a transaction whereby the principal is to acquire some rights, or is to be subjected to some liabilities." And he further observes, in a note, that "all the decisions—impliedly, at least—sustain this conclusion. Whenever the agent has been a solicitor or attorney at law it will be seen that he has been employed in some such transactions—the negotiation of a lease and giving a mortgage, the transfer of property, and the like." To the same effect is the opinion of Judge Hare and Mr. Wallace in their notes in *Le Neve* v. *Le Neve, supra*. They remark that "one who is asked for a professional opinion is an adviser, rather than an agent. If an agent who is employed to invest money or to conduct the negotiation for an estate buys with notice that the premises belong, in equity and good conscience, to a third person, it is immaterial whether his knowledge was acquired at the time or in the course of an antecedent transaction. * * * But the case is obviously different where an attorney who has been retained to examine a title conducts the investigation in the usual course of business without discovering a break or flaw, and so informs his client, without disclosing a fact which he has learned inci-

dentally in examining the same title for another party. Under these circumstances the purchase is not made. through the agent, nor does he practice a fraud or deception on the equitable owner. His failure to disclose the truth may be wrongful, or it may be dictated by a sense of professional obligation to the person for whom he was acting at the time when he obtained the information. But there is nothing to affect the conscience of the principal, nor can he be said to have constructive notice of that which he would not have ascertained if he had examined the title instead of employing an attorney."

These principles, as applied to the facts before us, very plainly show that the knowledge of the attorney should not be attributed to Ricks. The attorney here was merely consulted as to the title, and does not appear to have been employed to negotiate the purchase, or to acquire the title. Ricks, then, having no constructive notice, either by *lis pendens* or the knowledge of the attorney, and being himself possessed of no actual knowledge, either of the indebtedness or of the judgment against the executors (which latter would have put him upon inquiry), is to be deemed, under the findings of the Court, a *bona fide* purchaser for value, and without notice. His exceptions, therefore, must be sustained.

Fifth, as to the Mann-Arrington Gold Mining tract: This tract was allotted in the partition proceedings to T. M. Arrington, who conveyed the same, on April 2, 1881, to J. P. Daughtry, as trustee, to secure certain indebtedness due Bunn, Battle & Co. This conveyance having been made before the removal of the action, the said Daughtry was affected with constructive notice. On November 3, 1884, he conveyed to B. H. Bunn. The action having been removed, the said Bunn had no constructive notice, but it is found that he had actual knowledge of the suit, as well

as of the indebtedness of the estate.    B. H. Bunn conveyed on November 26, ·1886, to Bennett Bunn, who paid full value, and had neither actual nor constructive notice. Bennett Bunn, on January 27, 1888, conveyed for value to the Mann-Arrington Gold Mining Company, who had actual notice.    Under the authorities cited in this opinion relative to the Fox and Harrison tract the Mann-Arrington Gold Mining Company are protected by the want of notice to their grantor, Bennett Bunn.    The exception, therefore, must be sustained.

Sixth, as to the legacy of J. C. Arrington:  We have examined the authorities cited by counsel, and are of the opinion that they do not sustain the position that the legatee is estopped from enforcing his claim simply by reason of the partition between the devisees.   The legacy, however, is not a charge upon the land, in the sense that it can be enforced against those purchasers who, under the circumstances of this case, have purchased in good faith, for value, and without notice.    The ruling of the Court, with this modification, is sustained.

Seventh, as to the statute of limitations:  Under the views we have taken the statute of limitations is only material in respect to the Hilliard tract.    The judgment against the executors was obtained on September 7, 1874, and this action was commenced at the Fall Term, 1879, of the Superior Court of Nash County.    The statute ceased to run, from that time, as to all the parties, and those claiming under them.    It is also to be noted that the purchasers had actual notice.    The exception is overruled.

IN THE APPEAL OF S. L., A. H., AND J. C. ARRINGTON.

SHEPHERD, C. J.: This appeal relates solely to the mill tract, situated in Franklin county.   The purchasers of this

tract paid full value, and without actual notice. At the time of the purchase there was only a judgment against the executors in Franklin county. This judgment, we have seen in the discussion of the third general proposition in the opinion in the foregoing appeal, was not constructive notice, unless actual knowledge of its existence was brought home to the purchasers. The exception is overruled.

Both of these cases are remanded in order that judgments may be entered in accordance with the opinions of the Court, and it is so ordered.                    Remanded.