WILLIAM L. HUGHES, JR. v. NORTH CAROLINA STATE HIGHWAY
COMMISSION
AND
COLVARD OIL COMPANY, INC. v. NORTH CAROLINA STATE HIGHWAY
COMMISSION
AND
FARMERS EQUIPMENT, INC. v. NORTH CAROLINA STATE HIGHWAY
COMMISSION

No. 443

(Filed 31 January 1969)

1. Eminent Domain § 13;    Lis Pendens—    condemnation proceedings
   by landowner — ineffective as lis pendens
   Landowner's special proceeding in the nature of inverse condemnation, which was instituted against Highway Commission and municipality for compensation for land allegedly taken for highway purposes, does not constitute lis pendens under G.S. 40-26 so that persons acquiring title while the action was pending take title subject to the proceeding and the consent judgment entered therein, since (1) both the Commission and the municipality denied a taking by eminent domain and instead alleged that the highway was constructed by agreement with the landowner, (2) the exceptions or reservations appearing in the purchasers' chains of title were insufficient in description to effectively reserve the land in question to the landowner, (3) the

landowner's name did not appear on the defendant, or respondent, side of the indexes or cross-indexes of the public records, nor was the proceeding mentioned in any deeds or muniment of title in subsequent purchasers' chains of title, and (4) there was no map or any evidence in the record to show that the Highway Commission by any sign or overt act ever indicated a claim to the property of greater width than was actually used for highway purposes.

**2. Eminent Domain § 15— highway condemnation — time of passage of title**

At the time landowner instituted G.S. Ch. 40 proceeding in 1940 for compensation for land allegedly taken by Highway Commission and municipality for highway purposes, title was not divested until the condemnor obtained a final judgment in his favor and paid to the landowner the amount of damages fixed by such judgment, and the landowner could sell the land during the pendency of the special proceeding.

**3. Lis Pendens— purpose — notice**

The law as to lis pendens, G.S. 1-116 et seq., provides a definite method for giving constructive notice so that a search of known records will convert it into actual notice, and since application of this rule may work hardships in many instances, a strict compliance with its provisions is required.

**4. Eminent Domain § 13— action by owner for compensation**

The method prescribed by G.S. Ch. 40 for arriving at compensation for condemnation of land for highway purposes is open to the landowner as well as the Highway Commission, although the landowner may not maintain a proceeding under this chapter unless there has been a taking under the power of eminent domain.

**5. Eminent Domain § 7— proceeding by condemnor — the petition — description of property**

When the condemnor seeks to follow the procedure permitted by G.S. Ch. 40, his petition must contain a description of the property actually in litigation and not merely a description of the entire tract.

**6. Estoppel § 3— estoppel by pleadings**

Where parties by their pleadings deny the taking of certain land by eminent domain, they are precluded by this denial from maintaining a contrary position at trial or on appeal.

**7. Notice § 2— duty of party on notice**

A party having notice must exercise ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired had he made effort to learn the truth of the matters affecting his interest.

**8. Lis Pendens; Notice § 2— accessibility of facts to place on notice**

The rigor of the lis pendens rule has been softened by the equitable requirement that the means of information should be accessible to those who are careful enough to search for it, and it follows that this equitable requirement would apply with equal force when a party is charged with notice by means other than lis pendens.

**9. Registration § 3— as notice**

The purchaser of land is charged with notice of every description, recital, reference and reservation in deeds or muniments in his grantors' chain of title, and if the facts disclosed in such chain of title are sufficient to put the purchaser on inquiry, he will be charged with notice of what a proper inquiry would have disclosed.

**10. Registration § 5— parties protected by registration**

The examiner of a real estate title is entitled to rely with safety upon an examination of the records and act upon the assurances against all persons claiming under the grantor that what did not appear did not exist.

ON Writ of Certiorari to the North Carolina Court of Appeals to review its decision filed 14 August 1968 and reported in 2 N.C. App. 1.

This case consists of three separate civil actions involving claims against the North Carolina State Highway Commission for alleged damages resulting from the widening·of N. C. Highways 268 and 18 in the Town of North Wilkesboro, N. C. By agreement the three actions were consolidated for hearing and were submitted to the Court for judgment based upon an agreed statement of facts. Judgment was rendered by Gwyn, J., at the December 1967 session of Wilkes Superior Court.

Plaintiffs Colvard Oil Company, Inc. (Colvard) and Farmers Equipment, Inc. (Farmers) own certain property located along North Carolina Highways 268 and 18, and plaintiff W. L. Hughes, Jr. (Hughes) is the lessee of the land owned by Colvard, which is the subject of Colvard's action.

In 1911, one Henry T. Blair, (Blair) acquired title to a tract of land in Wilkes County, in or near the Town of North Wilkesboro (Town). In 1938, the Highway Commission started its project No. 7806 for the improvement of what are now designated as Highways 268 and 18. A section of this project went through a portion of Blair's land. Construction of the project was completed on 7 July 1940.

On 27 January 1940, Blair instituted a special proceeding before the Clerk of Superior Court for Wilkes County against the Town and the Highway Commission. Blair's complaint alleged, in paragraph 3, as follows:

"That, during the year 1938, the defendant the Town of North Wilkesboro applied to the petitioner for a right of way through a number of lots owned by said petitioner, advising the petitioner that its codefendant, the State Highway and Public

Works Commission was constructing a new road which would be paved and which would come into the town of North Wilkesboro, the petitioner at that time residing in the State of New York and not being in position to view the proposed location of said highway or highways, and during said year the defendant, the State Highway and Public Works Commission, was engaged in constructing, servicing and maintaining a State system of highways and roads, and while so engaged constructed and built a road through the property of this petitioner which is situate in the corporate limits of North Wilkesboro, constructing not only one (1) road, but three (3) roads through the most valuable part of said property, confiscating the property of the petitioner and taking the right of way, as he is informed and believes, of one hundred (100) feet — this being done over the protest of the petitioner and disregarding any agreement that the petitioner had as to where the road would be constructed and what lots or land would be confiscated.

The Town, in its answer to Blair's allegations, asserted "that the then town officials of the Town of North Wilkesboro applied to the plaintiff for permission for a right of way over certain property owned by the plaintiff in the Town of North Wilkesboro and advised the plaintiff that the State Highway and Public Works Commission had proposed to construct the said road if the Town of North Wilkesboro would acquire the rights of way of the property owners, and that the said State Highway and Public Works Commission would pave the road sought to be constructed through the lands of the plaintiff; that the plaintiff agreed in writing to waive claim for damages on account of the construction of the said highway over his property, provided the said State Highway and Public Works Commission would improve and pave the road through his premises, known as The County Home Road to the Fairplains Road."

The Highway Commission, in answering Blair's petition, alleged: "(A)nswering paragraph 3, it is admitted that during the year 1938 this respondent's codefendant, the Town of North Wilkesboro, applied to the petitioner for a right of way for the proposed highway development through the said property, and that, in response to this request, the petitioner executed a written agreement, agreeing 'to waive claim for damage, provided the highway is properly constructed,' etc. Relying upon this agreement on the part of the petitioner, this respondent, in cooperation with the Town of North Wilkesboro, caused the highway in question to be constructed across the petitioner's property." Except as expressly admitted as indicated above, each answer denied the allegations of Blair's paragraph 3.

Neither the answer of Highway Commission nor the answer of the Town made any mention or assertion to the effect that a right of way of 100 feet was claimed or taken. Nothing in the record showed that there was a posted map or highway signs indicating a claim to a right of way of greater width than was in actual use. It was stipulated by the present plaintiffs and the Highway Commission that after the answers were filed by the defendant Town and the defendant Highway Commission in the Blair suit of 1940, that "the defendant did not file a lis pendens nor did the defendant cross-index the pending suit."

In August, 1945, Blair conveyed certain lands, including the lands in question now owned by Colvard and Farmers, to T. J. Frazier and wife (Frazier). The deed, duly recorded, contained the following language after the description: ". . . being all of the lands of Henry T. Blair lying between the main right of way of Highway 268, the southern connecting road between Highway 268 and Highway 18, not including any part of said highways within said right of way lines." Thereafter, Frazier prepared a subdivision map of the property which was recorded in Wilkes County Registry on 12 July 1946; the map was entitled "Sunset Hills Addition to the Town of North Wilkesboro, Section 1," and indicated the location of Highways 268 and 18 but did not indicate the width of the right of way for the highways.

On 12 July 1946, Frazier conveyed Lot No. 1 as shown on the recorded map to Colvard, and the deed contained the following language: "This deed is made subject to and shall conform with the State Highway right of way." Colvard constructed a gasoline service station on the lot and paved the area from its building to the edge of the highway pavement.

By deed dated 11 July 1946, Frazier conveyed certain lots as shown on the recorded map to one Crawford and Eller; by mesne conveyances, Farmers, in 1962, acquired title to the Crawford and Eller property. At least one of the deeds in the chain of title between Frazier and Farmers contained the following language after the description: "This deed shall conform and is subject to the State Highway right of way."

On 23 November 1951, the Clerk of Wilkes County Superior Court terminated the special proceeding between Blair and the Highway Commission and Town by entering a judgment consented to by Blair, the Highway Commission, the Town, and their attorneys. The judgment, *inter alia,* decreed that the Highway Commission acquired certain easements of rights of way prior to 7 July 1940. The ease-

ments were described by courses and distances showing width of 100 feet. The judgment provided that Blair was to be paid $750.00 as just compensation for the taking.

In February 1964, the Highway Commission let the contract for its Project 6.800573, Wilkes County, which project consisted of grading, draining, widening, surfacing, and installing combination curb and gutters from a point at the intersection of Highways 268 and 18 along Highway 268 for approximately 0.9 miles. The project was completed on 1 November 1964. All of the work done along the property of the plaintiffs was within the 100-foot right of way embraced in the Blair consent judgment.

Present plaintiffs filed separate actions alleging damages due to widening of Highway 268. Colvard and Farmers alleged that the Highway Commission took a portion of their lands for highway purposes. Hughes alleged that he was the lessee of Colvard and that he was damaged by the taking. The Highway Commission filed answer in each of the three cases, denying the taking, and pleaded the Blair judgment as a bar to any recovery.

Plaintiffs contend that the Highway Commission did not own a 100-foot wide right of way, but that it owned only an easement between the two ditches, consisting of property actually being used for highway purposes before the widening of the road in 1964.

The parties stipulated that at no time did the Highway Commission make any demand on Colvard or Farmers not to pave the area from its buildings to the paved portion of the public highway. There was no allegation that the plaintiffs had any actual knowledge of the suit between Blair and the Highway Commission and the Town or the consent judgment between those parties.

After hearing, Judge Gwyn entered the following judgment:

"Upon the agreed statement of facts the Court is of the opinion that by the Judgment in the Blair case dated November 23, 1951, the plaintiffs were not divested of their title to the lands in controversy;

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that the plaintiffs are owners of the lands described in the petition in the Blair case as embraced within the 100-foot right of way, exclusive of so much of the right of way as was used, from ditch to ditch, for the actual construction of the highway. It is further adjudged that the plaintiffs are entitled to compensation for their lands embraced within the 100-foot right of way and which were appropriated for the widening of Highway 268 and Highway 18, as alleged in the pleadings.

"The plaintiffs are permitted to amend their pleadings to make more definite, by metes, bounds and markers, the description of the lands alleged to have been appropriated by the State Highway Commission as embraced within the said 100-foot right of way."

Defendant Highway Commission appealed to the Court of Appeals. The Court of Appeals held that the Commission by virtue of the 1951 judgment in the special proceedings instituted by Blair in 1940 acquired an easement approximately 100 feet wide in the land in question as against plaintiffs, who were not parties to the special proceeding and who acquired their title indirectly from Blair between 1945 and 1951. The Court of Appeals vacated Judge Gwyn's Judgment and remanded the action for judgment consistent with its opinion. Plaintiffs Colvard, Farmers and Hughes petitioned for certiorari to review the judgment of the Court of Appeals pursuant to G.S. 7A-31(c)(3). The petition was allowed.

*Thomas Wade Bruton, Attorney General; Deputy Attorney General Harrison Lewis; Trial Attorney Charles M. Hensey; Associate Counsel E. James Moore, and Associate Counsel Porter and Conner, for respondent appellee.*

*McElwee & Hall and Moore & Rousseau for appellants.*

BRANCH, J.

[1, 2]   A special proceeding was instituted 27 January 1940 by Blair pursuant to N. C. Gen. Stat. Chap. 40, entitled "Eminent Domain," for compensation for land allegedly taken by the Highway Commission and the Town for highway purposes. At that time title was not divested until the condemnor obtained a final judgment in his favor and paid to the landowner the amount of damages fixed by such final judgment, and the landowner could sell during the pendency of the special proceeding. The person who owned the land when the award was confirmed and final judgment entered was the proper person to be compensated. *Highway Commission v. York Industrial Center, Inc.,* 263 N.C. 230, 139 S.E. 2d 253. Since the landowner, Blair, was in position to sell prior to final judgment, the question presented is whether subsequent purchasers, who were not parties to the action and who bought the real property while the action was pending or after entry of judgment, were bound by the consent judgment entered in the special proceeding instituted by Blair.

[3]   The statutory law as to lis pendens embodied in N. C. Gen. Stats. 1-116 *et seq.,* provides a definite method for giving construc-

tive notice, so that a search of known records will convert it into actual notice. Since the application of this rule may work hardship in many instances, a strict compliance with its provisions is required. *Arrington v. Arrington*, 114 N.C. 151, 19 S.E. 351. The parties to this appeal stipulated that the defendant "did not file a lis pendens, nor did the defendant cross-index the pending suit." It is thus apparent that we need not consider the statutory lis pendens as contained in N. C. Gen. Stats. 1-116 *et seq.*, since there was no attempt to comply with its terms.

N. C. Gen. Stat. 40-26 provides: "When any proceedings of appraisal shall have been commenced, no change of ownership by voluntary conveyance or transfer of the real estate or other subject matter of the appraisal, or any interest therein, shall in any manner affect such proceedings, but the same may be carried on and perfected as if no such conveyance or transfer had been made or attempted to be made."

The Court construed N. C. Gen. Stat. 40-26 in the case of *Caveness v. Charlotte, R. & S. R. R.*, 172 N.C. 305, 90 S.E. 244. There, action was brought against the defendant for permanent damages by reason of construction and operation of a railroad by the defendant on a street which abutted the plaintiff's property. Although none of the plaintiff's land was actually taken, he sought damages for impairment of value to his land which resulted from operation of the railroad. The plaintiff conveyed the land while suit was pending and the defendant contended that the plaintiff thereby lost his right to recover. The Court, in holding for the plaintiff, stated:

> "Under our statute and in condemnation proceedings, Revisal, sec. 2587, the railroad acquires the right to remain upon the land, construct and operate its road on the payment into court of the amount assessed by the appraisers, and the recovery should inure to the one who owns the property at that time. True, provision is made for appeal by either party, and the damages may thereafter be increased or lowered, and the right may be lost by failure to pay the amount ultimately awarded; but the right to enter and construct and operate its road is acquired when the company pays the amount assessed by the first appraisers, and the owner at that time is entitled to the compensation for the easement. In that case, however, if the owner at the time of entry shall have instituted condemnation proceedings, the statute, sec. 2594, expressly provides 'That no change of ownership, by voluntary conveyance or transfer of real estate or any interest therein or of the subject-matter of the appraisal,

shall in any manner affect such proceedings, but the same may be carried on and perfected as if no such conveyance or transfer had been made or attempted to be made.' The proceedings by this section are constituted a *lis pendens,* and, although the grantee, as stated, prior to payment of the amount may be entitled to this compensation, if proceedings have been instituted, he must assert his right by action or appropriate proceedings in the cause. . . ."

[4, 5]   The method prescribed by N. C. Gen. Stat. Chap. 40 entitled "Eminent Domain" for arriving at compensation for condemnation of land for highway purposes is open to the landowner as well as the Highway Commission. *Yancey v. Highway Commission,* 222 N.C. 106, 22 S.E. 2d 256. However, the landowner may not maintain a proceeding under this chapter unless there has been a taking under the power of eminent domain, *Penn v. Carolina Virginia Coastal Corp.,* 231 N.C. 481, 57 S.E. 2d 817, and when the condemnor seeks to follow the procedure permitted by this portion of the statute, his petition must contain a description of the property actually in litigation, and not merely a description of the entire tract. The property must "first be located." *Gastonia v. Glenn,* 218 N.C. 510, 11 S.E. 2d 459.

[1]   Neither the Highway Commission nor the Town challenged the sufficiency of Blair's pleadings or took action to make the description of the property more certain so as to "locate the property." Neither did they, by cross action, assert their right to proceed with condemnation under the provisions of Chapter 40. Rather, both denied a taking by eminent domain and alleged that the highway through Blair's property was constructed by agreement with Blair, pursuant to which, *inter alia,* he executed a written waiver of claim for damages.

[6]   The Highway Commission and the Town by their pleadings in the 1941 special proceeding further denied the taking of 100 feet of Blair's land, and by this denial were precluded from maintaining a contrary position at trial or on appeal. *Hemphill v. Board of Aldermen,* 212 N.C. 185, 193 S.E. 153.

[1]   The pleadings in the Blair special proceeding sound of contract and none of the parties proceeded so as to clearly invoke the provisions of N. C. Gen. Stat. 40-26.

The Highway Commission presently contends that the exceptions or reservations appearing in plaintiffs' chains of title were sufficient to effectively reserve the land involved in this litigation to Blair.

We do not agree with this contention. If the reservations or exceptions — which do not describe or delineate the area now claimed by the Highway Commission — affect the land in litigation, it must be that they were sufficient to put subsequent purchasers to inquiry.

Conceding, without so deciding, that the provisions of N. C. Gen. Stat. 40-26 are applicable to instant case and that the language of the exceptions or reservations contained in plaintiffs' chains of title were sufficient to put them to inquiry, we consider the effect of the statute and the reservations and exceptions when applied to instant facts.

[7, 8] A party having notice must exercise ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired had he made effort to learn the truth of the matters affecting his interest. *Hargett v. Lee,* 206 N.C. 536, 174 S.E. 498. However, the rigor of the lis pendens rule has been softened by the equitable requirement that the means of information should be accessible to those who are careful enough to search for it. *Arrington v. Arrington, supra.* It logically follows that this equitable requirement would apply with equal force when a party is charged with notice by means other than lis pendens.

3 Merrill on Notice, § 1159, at 79 (1952) states:

> "Concomitant to the rule that the lis pendens notification is confined to the apparent effect of the pleadings, they must contain a description of the property affected. As has been said, 'the *res* must be sufficiently described in the pleadings.' Hence the lis pendens notification will be confined to the property specified in the papers, and where a partial interest only in the property is asserted to be in issue the lis pendens notification does not extend to the entire interest."

[9] It is further well recognized that the purchaser of land is charged with notice of every description, recital, reference and reservation in deeds or muniments in his grantors' chain of title, and that if the facts disclosed in such chain or title are sufficient to put the purchaser on inquiry, he will be charged with notice of what a proper inquiry would have disclosed. *Morehead v. Harris,* 262 N.C. 330, 137 S.E. 2d 174.

[10] The examiner of a real estate title by his search of the records seeks to determine if the grantors in the chain of title were seized of a marketable title, free of all taxes, liens or encumbrances, at the time such grantor made or intends to make the conveyance.

In making such examination he is entitled to rely with safety upon an examination of the records and act upon the assurances against all persons claiming under the grantor that what did not appear did not exist. *Smith v. Fuller,* 152 N.C. 7, 67 S.E. 48.

Ordinarily, proceedings under Chapter 40 are instituted by the condemnor by petition containing an accurate description of the property which it seeks to condemn, thereby placing the landowner on the defendant's or respondent's side of the indexes and cross-indexes of the public records and furnishing accessible means by which the property may be identified.

[1] Blair instituted a special proceeding in the nature of inverse condemnation by petition which was devoid of description as to the property in litigation, and only contained a reference to an entire subdivision by name and reference to a map "which will be presented at the hearing of this case," together with allegations, upon information and belief, that a right of way of 100 feet was confiscated. Blair's name does not appear on the defendant, or respondent, side of the indexes or cross-indexes of the public records, nor was the special proceeding instituted by Blair mentioned in any of the deeds or muniments of title in plaintiffs' chains of title. The record contains no map or any evidence which would show that defendants by any sign or overt act of any kind ever indicated a claim to the right of way of greater width than was actually used for highway purposes from ditch to ditch. Defendant Highway Commission only exercised dominion over so much of the right of way as it used in construction of the road from ditch to ditch, and allowed Blair's successors in title to erect and maintain improvements up to the area over which it exercised dominion. Thus, had plaintiffs made diligent search of the public records, they would have found nothing to further locate or give notice of any adverse claim beyond the right of way used for construction of a highway, from ditch to ditch. Had plaintiffs directed their inquiry to an actual examination of the area in which the land in litigation was located, they would have found a highway 30 feet in width, extending from ditch to ditch, which would have been entirely consistent with the reservations or exceptions of record and not inconsistent with their grantors' title.

In 3 Merrill on Notice, § 1167, at 89 (1952) it is stated:

"It may be said that a lawsuit not diligently prosecuted is fraudulently maintained, in so far as the parties urge its pendency as a bar to the acquisition in good faith of interests free of the claims asserted therein. Accordingly, it is held generally that abandonment of the suit or a failure to prosecute it dili-

gently, even after an interlocutory decree, defeats lis pendens notification. Delay to prosecute his claim with dispatch may be as fatal to the cross-complaint relying upon the doctrine of lis pendens as it is to the complainant. . . ."

Certainly the strength of plaintiffs' contentions in the instant case is highly accentuated by the action of the parties to the special proceeding in allowing the special proceeding, to which plaintiffs were not parties, to lie dormant for a period of eleven years before attempting to conclude it by a consent judgment.

Plaintiffs, Blair's successors in title, were not bound by the consent judgment entered in the special proceeding instituted by Blair.

The decision of the trial court was without error, and the decision of the Court of Appeals is

Reversed.