The plaintiff, A. W. Graham, claims an interest in the minerals, mineral rights and privileges in the tract of land described in the complaint, by virtue of an alleged contract in writing between himself on the one part, and the other plaintiffs and the defendant, J. D. Puryear, on the other part. As to the plaintiffs' title to the property, the allegations in the complaint are (in substance) that in 1862 the defendant, J. D. Puryear, contracted with Seth D. Pool to purchase the land for his wife, Susan Ann Puryear, and that with her money the land was paid for; that Mrs. Puryear, with her husband, went into possession of the land and the mineral rights incident thereto in the same year, the deed, however, having been executed by Pool to Puryear, the husband; that Mrs. Puryear, and her husband remained in the adverse, notorious and continuous possession of the property up to the time of her death, which occurred in 1886, and that since her death the plaintiffs other than Graham, as heirs at law of their mother, Mrs. Puryear, have (279) been in possession of the land, adverse and open, and are still in possession; and that the plaintiff Graham, after his contract in reference to the mineral interests and privileges with the other plaintiffs and the defendant Puryear, went into possession of the mineral rights and privileges. It is further alleged on the part of the plaintiffs that after the registration of the contract between Graham, after his contract in reference to the mineral interests and privileges with and the other plaintiffs and the defendant Puryear, there was found among the papers of the administrator of Dr. Sanford, father of the female defendants, except Mrs. Rebecca Sanford, who is his widow, a deed purporting to have been made by the defendant, J. D. Puryear, to Dr. Sanford, dated 14 February, 1868, for one hundred acres of land "on the waters of Crooked Fork adjoining the lands of W. M. Hill, Thomas. Chandler and others," for the consideration of $150. It is not alleged in the complaint that the one hundred acres above mentioned are a part of the tract of land described in the complaint, but the defendant in his answer admits such to be the fact. That deed was recorded 12 April, 1898, after the registration of the contract between Graham and the other plaintiffs and the defendant Puryear. The plaintiffs further alleged that they had no knowledge of the existence of the last-mentioned deed until after its registration. Another allegation is that the defendants, except the defendant Puryear, set up a claim and ownership to the land and have obstructed a sale contemplated by Graham of his mineral interest in the land, to his irreparable injury, and that by reason of the acts and words of the defendants and the deed from Puryear to Sanford, the coplaintiffs, with Graham, will be prevented from executing their contract, by which they will suffer irreparable injury.
The relief sought by the plaintiffs in this action is that the defendant Puryear may be declared a trustee for the plaintiffs. (280) *Page 204 
and that the alleged parol trust originally created for Mrs. Puryear, as set out in the complaint, when the land was conveyed by Pool to the defendant Puryear, may be established; and for the removal of the alleged cloud on the title to the property caused by the acts and words of the defendants and the deed to Sanford.
The defendants, other than Dr. Puryear, in their answer, deny the allegations of the plaintiffs as to their title to the land and of the plaintiff Graham to the mineral rights and interests therein, and aver that they are the owners of the one hundred acres mentioned in the deed from Puryear to Sanford.
An injunction restraining the defendants from executing any deed or deeds to said land, minerals or mineral rights, or from their attempting to enter upon the lands, as prayed for by the plaintiffs and granted by his Honor, who heard the motion, to be continued till the final hearing. The matter now before us for decision grows out of the appeal of the defendants from the order granting the injunction.
We are of the opinion that his Honor erred in granting the injunction. There was no allegation that the defendants threatened or intended to enter upon the land, but on the contrary, the plaintiffs alleged that the defendants had threatened to bring suit for its recovery. It does not appear that the defendants were unable to answer in damages for any trespass upon the land they might commit. But if insolvency of the defendants had been alleged and they had threatened to enter upon the land, we do not see how they could have been restrained from making such entry, even though the deed under which they claimed was obviously invalid. "Such entry as a court can enjoin is only an entry under force or color of legal process. It will not enjoin a mere trespass (281) unless irreparable damage is threatened. There are remedies for a mere trespass, both preventive and punitive, as effectual and more appropriate than through the equitable powers of a court." German v.Clark, 71 N.C. 420. The defendants were also enjoined from executing any deed or deeds of conveyance to the lands, minerals or mineral rights. There was no allegation that the execution of such deeds would injuriously affect the plaintiffs' title. There was indeed an allegation that the assertion of the claims of the defendants through the deed from Puryear to Sanford would prevent the plaintiffs from selling the land and minerals, thereby causing the plaintiff irreparable damage; but it is apparent that the execution of the deed could not increase the value of the claim already set up under the deed from Puryear to Sanford; nor could the claims of a purchaser under such deed be calculated to diminish the chances of a sale by the plaintiffs. If the plaintiffs should be entitled to their main relief, as prayed for in their complaint, and there should be a decree of the court below *Page 205 
granting them that relief, the rights accruing to the plaintiffs under such a decree could not possibly be affected even if the defendants had, after this action was commenced, sold the one hundred acres of land and made title thereto to the purchaser. The decree would be based upon the findings of the jury, or by the judge if submitted to him by consent, that the plaintiff Graham procured his interest in the land without knowledge of the deed from Puryear to Dr. Sanford (executed before the registration law of 1885), and that the deed was registered after the registration of the contract under which Graham claimed to have obtained his interest in the land. If the plaintiffs should make good on the trial the allegations in their complaint, the claim of the defendants under the deed from Puryear to Dr. Sanford would be of no avail to them, and, of course, it follows that any purchaser from them under that (282) claim of title could get no higher or greater interest or title than the bargainors had. And besides, when the complaint of the plaintiffs was filed, that was lis pendens, and all subsequent purchasers would have to take notice of the purposes of the action and of the claim of the plaintiffs. Collingwood v. Brown, 106 N.C. 362; Arrington v.Arrington, 114 N.C. 151. The injunctive relief prayed for in this case does not rest upon such a condition of facts as appeared in the cases ofMortgage Co. v. Long, 113 N.C. 123 and Jones v. Buxton, 121 N.C. 285. In Mortgage Co. v. Long, supra, the allegation was that the defendants (who were judgment creditors of the mortgagor and who had docketed their judgments since the registration of the mortgage to the plaintiffs) were making efforts to sell the mortgaged land under execution, thereby casting a cloud upon the plaintiffs' title to the land. The claim of the defendants, there, was founded upon an alleged misdescription of the land conveyed in the mortgage, and which it was averred rendered the mortgage void. The plaintiffs, there, prayed for a construction of the deed as to sufficiency of description to the land and for injunctive relief against the defendants until the final hearing. The injunction was allowed, and this Court sustained the order on the ground that the sale of the land under the execution would cause irreparable damage to the plaintiffs by the almost certainty of preventing a full price being offered for the land when it should be sold by the mortgagee for the purpose of satisfying the mortgage debt. As we have shown, though, such consequences could not follow a sale by the defendants in this action under their deed from Puryear. If the plaintiff Graham procured his mining interest in the land with knowledge of the deed from Puryear to the defendants' ancestor, and the description of the land therein contained is sufficiently definite to pass the title (which we do now pass upon for the (283) simple reason that it is not before us, and is a matter which wholly belongs to the trial below) then, the plaintiffs have *Page 206 
no title to the land. If, on the other hand, the plaintiff Graham got his interest in the land without knowledge of the deed from Puryear to the defendants' ancestor and had it registered (it having been executed before the enactment of the law of 1885, ch. 147), before the deed from Puryear to the defendants' ancestor was registered, then his title is good and he would be entitled to the relief he seeks, if he makes good the other allegations of the complaint; and any pretended sale on the part of the defendants would be of no effect, for the reasons we have already given.
It is more than probable that injunctive relief was invoked in this case because of the allegation in the complaint that the defendants' claim rested on a deed — the one from Puryear to Sanford — in which the land attempted to be conveyed (one hundred acres) was described as being "on the waters of Crooked Fork, adjoining the lands of W. M. Hill, Thomas Chandler and others," and that the answer admitted that the boundaries in the deed were accurately set out in the complaint, and that therefore no part of the plaintiff's land had been conveyed by the deed. We think the answer admits that allegation of the complaint, and also that the one hundred acres was a part of the two seventy-six-acre tracts, claimed by the plaintiffs. If that question was before us, we would have no hesitancy in deciding that the description of the one hundred acres was fatally defective and could not be cured by parol evidence. Allen v. Chambers, 39 N.C. 125; Grier v. Rhyne, 69 N.C. 346. The last two cases were cited and approved in Perry v. Scott, 109 N.C. 374. But that matter belongs to the trial of the case on its (284) merits when it is regularly called in the court below. Injunctive relief is afforded along certain fixed equitable rules and should never be granted when no equities are involved and when the question for decision is one purely of law, as in this case.
There was error in the order of his Honor granting the injunction.
REVERSED.
CLARK, J., did not sit on the hearing of this appeal.